IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>JASON DALE COLE &<br>CRYSTAL FAYE CHESSER,<br><br>*Defendants.* | Case No. CR-24-080 RAW |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT**

COMES NOW the United States of America by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Michael E. Robinson and, respectfully submits its brief in opposition to Defendant's Motion to Suppress Evidence [Doc. No. 94]. In the Defense Motion, Defendants seeks to suppress the contraband seized from their residence and outbuilding on November 18, 2023. The Defense Motion should be denied, as the affidavit in support of the search warrant was supported by probable cause.

**I.   BACKGROUND**

In the fall of 2023, Trooper Ethan Mulkey of the Oklahoma Highway Patrol began investigating a string of burglaries and narcotics trafficking in the eastern part of Okmulgee County and the western part of Muskogee County. As part of his investigation, Trooper Mulkey would ask questions during traffic stops and other routine police interactions about the recent surge in burglaries and narcotics trafficking in the area. During these interactions, Trooper Mulkey became acquainted with D.S., who became a suspect during a separate investigation into a stolen motorcycle. Trooper Mulkey first became acquainted with D.S. approximately a month to two

months prior to the execution of the search warrant on November 18, 2023. D.S. requested assistance from Trooper Mulkey with several pending criminal charges in exchange for providing information about the burglaries and narcotics trafficking in the area. Trooper Mulkey told D.S. that he would talk to law enforcement and prosecutors on D.S.'s behalf if the information he provided developed into something useful. D.S. then provided Trooper Mulkey with information implicating a man known in the community as "Outlaw" that was engaged in drug trafficking, the unlawful possession of firearms, and possession of stolen property at his residence. Specifically, D.S. told Trooper Mulkey that on or about November 1, 2023, he had taken a stolen motorcycle to Outlaw's residence in Okmulgee as payment for methamphetamine. D.S. did not provide a specific address of Outlaw's residence, but he was able to provide Trooper Mulkey with the general area where Outlaw's residence was located. After receiving this tip, Trooper Mulkey began directing his surveillance on properties that contained a trailer house and outbuilding, consistent with what D.S. had described as Outlaw's residence. As part of his investigation, Trooper Mulkey communicated with locals in the area, as well as a rural water district inspector, which led Trooper Mulkey to identify Outlaw's residence as 20725 Gilmer Road, Okmulgee, Oklahoma. Trooper Mulkey confirmed with D.S. that this was the residence Outlaw lived at, and was the same residence where he exchanged a stolen motorcycle for methamphetamine.

Prior to the attempted traffic stop on November 18, 2023, Trooper Mulkey had started drafting a search warrant affidavit for the 20725 Gilmer Road property based on the tips D.S. had provided him regarding drug trafficking and illegal firearm possession in the residence, as well as his own surveillance. Trooper Mulkey decided to wait until after the Thanksgiving holiday to seek the warrant due to law enforcement manpower restraints around the holiday.

On November 18, 2023, at approximately 6:30 a.m., Trooper Mulkey was on duty

patrolling the area of Skelly Road near 214th Street West, in Muskogee County, Oklahoma. Trooper Mulkey observed a red Chevrolet truck traveling westbound on Skelly Road traveling in the opposite direction going approximately 67 miles per hour in a 45 mile per hour zone.[1] Trooper Mulkey turned his patrol vehicle around and caught up to the truck. Trooper Mulkey observed the truck rapidly decrease its speed and travel below the posted speed limit, while continuously traveling over the marked center line of the roadway. Trooper Mulkey activated his emergency lights to conduct a traffic stop of the truck. The driver of the Truck eluded Trooper Mulkey on a high-speed chase and eventually drove into the woods. Trooper Mulkey pursued on foot and ultimately placed the sole occupant of the truck, who was identified as Defendant Cole, under arrest. Trooper Mulkey inventoried the truck and seized two loaded pistols, a loaded extended magazine, and approximately a half pound of a white, crystal-like substance, packaged for distribution, which was ultimately confirmed to be methamphetamine. Based on the tips provided by D.S., his surveillance of Defendant Cole's residence, and the contraband seized during the inventory, Trooper Mulkey applied for a search warrant to search Defendant Cole's premises located at 20725 Gilmer Road, Okmulgee, Oklahoma. The search warrant was granted by Judge Pandee Ramirez of the Okmulgee County District Court. The search of Defendant Cole's premises resulted in the seizure of over three kilograms of methamphetamine, multiple firearms and ammunition, as well as drug paraphernalia. Defendant Cole's girlfriend, Defendant Chesser, lives with Defendant Cole in the residence.

Several hours after the inventory of the truck, at approximately 11:30 a.m., Trooper Mulkey, deputies from the Okmulgee County Sheriff's Office, and agents with the ATF executed the search warrant for Defendant Cole's property located at 20725 Gilmer Road, Okmulgee,

---

[1] On a recorded call on December 3, 2023, Defendant Cole admits to a friend that he was speeding because someone behind him was riding on his bumper.

Oklahoma. The property consisted of a residence and an outbuilding. While securing the premises, law enforcement discovered Defendant Chesser in the master bedroom in bed with a loaded rifle and pistol. On the nightstand adjacent to the bed, law enforcement found a loaded revolver and Defendant Chesser's identification card. Law enforcement seized approximately 60 grams of methamphetamine from a black bag that was located in a kitchen cabinet. The deed to 20725 Gilmer Road shows that the property was purchased by Defendant Cole and Defendant Chesser on April 6, 2023.

During the search of the outbuilding, law enforcement seized several kilograms of suspected methamphetamine, approximately $10,000 in United States currency, multiple firearm suppressors, multiple firearms, over two hundred pounds of various calibers of ammunition, multiple scales used for drug distribution, and a piece of mail addressed to Defendant Cole. In a post-*Miranda* interview, Defendant Chesser revealed to Trooper Mulkey that Defendant Cole is the only person with access to the outbuilding, and that the majority of the contraband belonged to Defendant Cole. Trooper Mulkey also interviewed Defendant Cole's son, A.M. After waiving his *Miranda* rights, A.M. stated that Defendant Cole is the only person with a key to the lock that was on the outbuilding.

## II. FACTS ALLEGED IN THE AFFIDAVIT

In support of his affidavit to search the property located at 20725 Gilmer Road, Okmulgee, Oklahoma ("hereinafter the Premises"), for controlled dangerous substances, firearms, ammunition, and vehicle parts, Trooper Mulkey alleged the following, in pertinent part:

1. Trooper Mulkey received information from D.S. that a stolen motorcycle was delivered to the Premises on or around November 1, 2023. 2

---

2 D.S. is a named informant in the affidavit.

2. D.S. told Trooper Mulkey that he (D.S.) delivered the stolen motorcycle to the Premises and gave it to Defendant Cole as payment for methamphetamine on or around November 1, 2023.

3. D.S. told Trooper Mulkey that he (D.S.) has been to Defendant Cole's residence, located at the Premises, on "numerous occasions purchasing illegal drugs." D.S. told Trooper Mulkey that Defendant Cole has "approximately 100 to 200 illegal firearms inside his residence, along with kilos of methamphetamine."

4. Trooper Mulkey knows Defendant Cole has numerous felony convictions for illegal firearms possession, illegal drug possession, assault and battery on a peace officer, burglary, concealing stolen property, and eluding a peace officer.

5. On November 18, 2023, at approximately 0626 hours, Trooper Mulkey was patrolling the area of 234th Street West and Skelly Road, in Muskogee County, Oklahoma. Trooper Mulkey observed a red Chevrolet pickup bearing Oklahoma registration QRE370 traveling westbound on Skelly Road, towards Okmulgee County, Oklahoma. Trooper Mulkey recognized the vehicle to be Defendant Cole's vehicle, as Trooper Mulkey had been surveilling the Premises for approximately two weeks.

6. Trooper Mulkey activated his emergency lights and sirens to conduct a traffic stop on Defendant Cole for speeding, as he was going 67 miles per hour in a 45 mile per hour zone. Defendant Cole led Trooper Mulkey on a high-speed pursuit through Muskogee County and that pursuit concluded in Okmulgee County, near 330 Road and Garfield Road. Defendant Cole was driving towards his residence in Okmulgee County and the pursuit concluded approximately two miles from the Premises.

7. Defendant Cole was the sole occupant of the vehicle. Trooper Mulkey located

"numerous kinds of pistol and rifle ammunition in the vehicle and in Defendant Cole's pant pockets on his person." Trooper Mulkey "also located a large quantity of methamphetamine (nearly half a pound)." Trooper Mulkey also located two loaded pistols in the vehicle, along with three (3) loaded AR-15 rifle magazines and numerous large caliber rifle ammunition.

8. Trooper Mulkey knows that property such as a motorcycle, which is mobile, is a "time sensitive item and can be concealed inside a dwelling of a residence or outbuilding."

## II. ARGUMENT AND AUTHORITY

In the Defense Motion, Defendant Chesser seeks to suppress all evidence seized pursuant to the search warrant on several grounds. Specifically, Defendant argues (1) the information in the search warrant was stale or failed to establish a time frame of when the items to be searched were last at the residence, (2) the search warrant lacked probable cause due to its reliance on an unreliable informant, (3) the warrant affidavit contained material omissions and misrepresentations that undermined the magistrate's ability to make an independent probable cause determination, and (4) the good faith exception to the exclusionary rule should not apply.

The Defense Motion should be denied, as Trooper Mulkey's search warrant was supported by ample probable cause, and even assuming *arguendo* that the warrant did not establish probable cause to search the Premises, the good faith exception should apply, and the evidence seized should not be suppressed.

### I. TROOPER MULKEY'S SEARCH WARRANT AFFIDAVIT WAS SUPPORTED BY PROBABLE CAUSE

The Defense Motion should be denied because Trooper Mulkey's search warrant affidavit was supported by ample probable cause. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also commands that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  The Supreme Court has opined that probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *Illinois v. Gates*, 462 U.S. 213 (1983).  The Tenth Circuit has held that the probable cause determination is based on the "totality of the information" contained in the affidavit and depends on an evaluation of several non-exclusive considerations, including (1) the reliability of the informer, (2) the timeliness of the informer's allegations, and (3) the nexus between the item to be seized and the place to be searched.  *United States v. Rice*, 358 F.3d 1268 (10th Cir. 2004); *United States v. Knox*, 883 F.3d 1262 (10th Cir. 2018).  Whether probable cause exists in a given case is a "flexible, common-sense standard, and no single factor or factors is dispositive.  *Gates*, 238-39.

*Reliability of Informer*

Trooper Mulkey's search warrant affidavit relies in part on the information provided by a named informant, D.S.  When an informer is involved in the probable cause analysis, the Tenth Circuit instructs reviewing courts to examine the veracity, reliability, and basis of knowledge of the informant as they relate to the target of the proposed search.  *United States v. Pulliam*, 748 F.3d 967 (10th Cir. 2014).  While hearsay evidence can support a finding of probable cause, the Tenth Circuit has determined that an informer is more reliable when the basis of the informant's tip to law enforcement is from personal knowledge of the alleged wrongdoing, and he is willing to be named in the affidavit.  *Id*. at 971.

In this case, D.S. provided Trooper Mulkey with information implicating "Outlaw" in narcotics trafficking and the illegal possession of firearms and stolen property at the Premises. D.S. is a named informant in the affidavit, and his basis of knowledge about the contraband at the

Premises was derived from his own personal observation. Specifically, D.S. told Trooper Mulkey that he brought a stolen motorcycle to Defendant Cole's residence and exchanged the motorcycle for methamphetamine on November 1, 2023. D.S. also told Trooper Mulkey that "Outlaw" had numerous firearms and ammunition at his residence. After receiving the tip from D.S., Trooper Mulkey conducted additional investigation and surveilled the area where D.S. said Outlaw lived for approximately two weeks prior to the execution of the search warrant. Based on this surveillance, Trooper Mulkey was able to recognize the truck he pursued on the morning of November 18, 2023, as belonging to Defendant Cole.

Importantly, D.S. provided information that implicated Outlaw as having methamphetamine and firearms at the Premises. Trooper Mulkey corroborated the veracity of the information D.S. provided after inventorying Defendant Cole's truck on November 18, 2023. D.S. had previously told Trooper Mulkey that he witnessed Defendant Cole engaging in drug trafficking at the Premises, and that Defendant Cole had multiple firearms at the Premises. Once Trooper Mulkey inventoried Defendant Cole's truck and seized a trafficking amount of methamphetamine and multiple firearms and ammunition, Trooper Mulkey had independent corroboration of the information D.S. had provided. At that point, Trooper Mulkey knew that Defendant Cole possessed methamphetamine in his truck, which is the same illegal substance that D.S. accused him of possessing at the Premises and that Defendant Cole was engaged in drug trafficking based on the weight of the methamphetamine he possessed in his truck. The inventory of the truck corroborates D.S.'s tip in two ways: the type of illegal drug Defendant Cole possessed, and the fact Defendant Cole was engaged in drug trafficking. With independent corroboration of D.S.'s tip, Trooper Mulkey had confirmation that D.S. was a credible informant, which strengthens the reliability of the information he provided concerning contraband at the Premises.

Defendant argues in the Defense Motion that Trooper Mulkey omitted the quid pro quo arrangement he had with D.S. concerning his pending charges and the information he provided, and that this omission misled the magistrate. Trooper Mulkey's offer to talk to law enforcement and prosecutor's behalf about D.S.'s pending criminal charges if the information he provided developed into something useful is a routine law enforcement tactic to obtain information, and is a typical arrangement judges are aware of. That is especially true in this case, as the informant provided information that Trooper Mulkey included in the affidavit that implicated himself in at least two crimes: possession of stolen property and possession of methamphetamine. The fact D.S. willingly made these statements against his own interest to Trooper Mulkey imply that there is a benefit that D.S. is expecting in exchange for the information. The fact the explicit arrangement was not divulged in the affidavit neither taints the information D.S. provided, nor negatively shades his credibility, as the information he provided was largely corroborated by Trooper Mulkey's surveillance and inventory of Defendant Cole's truck. More importantly, this omitted information is not material to a finding of probable cause in this case. The inclusion of a statement in the affidavit concerning what D.S. hoped to receive in consideration of the information he provided does not affect the probable cause that exists in the remainder of the affidavit and is of minimal relevance after Trooper Mulkey independently corroborated the information he provided. *United States v. Moses*, 965 F.3d 1106 (10th Cir. 2020) (In examining whether the excluded information would have been material, we consider whether the affidavit, had it included the omitted information, still would have supported probable cause and thereby justified a warrant).

*Timeliness*

Regardless of the source of the information, probable cause cannot be based on stale

information that no longer suggests that the items sought will be found in the place to be searched. *United States v. Shomo*, 786 F.2d 981 (10th Cir. 1986). When drug activity is ongoing, a multi-month gape between the receipt of information and the issuance of a search warrant does not render that information stale. *United States v. Villanueva*, 821 F.3d 1226 (10th Cir. 2016) (three-month old information not stale); *United States v. Myers*, 106 F.3d 936 (10th Cir. 1997)(five-month-old information not stale). Furthermore, the Tenth Circuit has held that "if the property sought is likely to be kept in one place for a considerable time-like drugs or firearms stored in a residence, probable cause may be found even though there was a substantial delay between the occurrence of the event relied on and the issuance of the warrant." *Shomo*, 786 F.2d 985 (10th Cir. 1986). The determination of timeliness does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant, instead, whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized. *United States v. Snow*, 919 F.2d 1458 (10th Cir. 1990). The Tenth Circuit has held that when the illegal activity in question is "continuous and ongoing," courts should be less likely to foreclose probable cause on the basis of otherwise dated information. *United States v. Mathis*, 357 F.3d 1200 (10th Cir. 2004).

In this case, Trooper Mulkey's affidavit states that D.S. delivered a stolen motorcycle to Defendant Cole's residence on or around November 1, 2023, and that he gave it to Defendant Cole in exchange for methamphetamine. The affidavit also alleges that D.S. told Trooper Mulkey that D.S. had been to Defendant Cole's residence on "numerous occasions purchasing illegal drugs." Furthermore, the affidavit contains D.S.'s assertion that Defendant Cole has "kilos of methamphetamine" and "approximately 100 to 200 illegal firearms" inside his residence. Both Based on the information D.S. provided, it is clear Defendant Cole was engaged in "continuous

and ongoing" criminal activity, which cuts against Defendant's argument that the information D.S. provided was stale. The affidavit contains assertions from D.S. that he purchased illegal drugs from Defendant Cole at the Premises on numerous occasions. While it is unclear from the affidavit when D.S.'s additional drug purchases from the Premises occurred, the affidavit specifies "on or around November 1, 2023" as a specific time when D.S. received methamphetamine from Defendant Cole at the Premises. The Tenth Circuit is clear that both drugs and firearms stored in a residence are the type of contraband that is likely to be kept in one place for a considerable amount of time. As such, the 17-day period between when D.S. last saw drugs and firearms at Defendant Cole's residence and the issuance of the search warrant is not a substantial delay between the occurrence of the event relied on and the issuance of the warrant. Lastly, Trooper Mulkey's surveillance of the Premises for approximately two weeks prior to the search warrant and the presence of methamphetamine and firearms seized from Defendant Cole's truck on November 18, 2023, demonstrate the continuous illegality and weigh against a finding that the information D.S. provided was stale.

*Nexus*

In order for an affidavit to establish probable cause, there must be a nexus between the contraband to be seized and the place to be searched. *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). This nexus exists when the affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are in a particular place. *United States v. Biglow*, 562 F.3d 1272 (10th Cir. 2009).

In this case, Trooper Mulkey applied for a search warrant to search the Premises for illegal drugs and firearms. The probable cause that Trooper Mulkey included in his affidavit to search the Premises was the information he received from D.S. and the contraband he seized from

Defendant Cole's truck on November 18, 2023. D.S.'s tip concerning Defendant Cole's drug trafficking and firearm possession from the Premises was corroborated by the seizure of a trafficking amount of methamphetamine and firearms during the inventory of Defendant Cole's truck on November 18, 2023. In his affidavit, Trooper Mulkey included that he had been conducting surveillance on Defendant Cole for approximately two weeks prior to the search of his residence, and that based on this surveillance, Trooper Mulkey recognized the truck during his pursuit on November 18, 2023, as belonging to Defendant Cole. Trooper Mulkey also included in the affidavit that during the pursuit, he recognized that Defendant Cole was "driving toward his residence" and that the pursuit concluded approximately two miles from the Premises. Considering the totality of the information contained in the affidavit, there was a substantial nexus between Defendant Cole's drug trafficking and unlawful firearm possession and the Premises.

## II. EVEN ASSUMING *ARGUENDO* THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE, THE GOOD FAITH EXCEPTION SHOULD APPLY

The Supreme Court determined in *United States v. Leon*, 468 U.S. 897 (1984) that evidence obtained pursuant to a search warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officer in objective good faith. The rationale for this exception is that the purpose of the exclusionary rule is to deter improper police action rather than punish errors by magistrates. *United States v. Gonzales*, 399 F.3d 1225 (2005), see also *United States v. Knox*, 883 F.3d 1262 (10th Cir. 2018) (the exclusionary rule is not a constitutional right of the defendant, but rather is a disincentive for law enforcement to engage in unconstitutional activity). The Supreme Court has instructed that even when exclusion would provide deterrence, courts must further inquire whether the benefits of that deterrence outweigh the substantial social costs of excluding relevant and incriminating evidence of wrongdoing. *Herring v. United States*,

555 U.S. 135 (2009). For the exclusionary rule to apply, the police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. *Id*. at 144.

However, while a magistrate's determination that probable cause exists in a search warrant affidavit is entitled to great deference, the deference is not boundless. *United States v. Danhauer*, 229 F.3d 1002 (10th Cir. 2000). There are four contexts where an officer cannot be found to have relied on a warrant in good faith: (1) where the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function, (3) where the supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and (4) the warrant was so facially deficient that the executing officers could not have presumed it to be valid. *Leon*, at 923. In the Defense Motion, Defendant alleges that the first and third situations are present, namely, that Trooper Mulkey misled the magistrate, and that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Deliberately or Recklessly False Affidavit*

When a defendant makes a substantial preliminary showing that intentionally or recklessly false statements are included in an affidavit supporting a search warrant and that the affidavit without the false statements is insufficient to support a finding of probable cause, the defendant is entitled to a hearing on the matter. *Franks v. Delaware*, 438 U.S. 154 (1978). The Defendant must make more than mere allegations of defects in a warrant – a defendant must produce evidence of the complained-of defects by offering affidavits or sworn or otherwise reliable statements of witnesses. *United States v. Smith*, 846 F. App'x 641 (10th Cir. 2021). If Defendant is able to

meet this burden, the defendant must establish at the hearing knowing or reckless falsity by a preponderance of the evidence before he may obtain suppression of the evidence obtained from the search. *Id*. An affiant's negligence or innocent mistake resulting in false statements in the affidavit is not enough to satisfy a defendant's burden. *Id*. at 171, see also *United States v. Orr*, 864 F.2d 1505 (10th Cir. 1988).

In the Defense Motion, Defendant takes issue with Trooper Mulkey's assertion in his affidavit that he "had been surveilling [Defendant Cole's] residence for approximately two weeks," and that he implied he "had gained information during this surveillance to support his assertions." Defense Motion, at 5. Trooper Mulkey's investigation and surveillance of Defendant Cole's residence was important to the affidavit, since this surveillance confirmed that the Premises was Outlaw's residence, and the same residence where D.S. gave Outlaw a stolen motorcycle in exchange for methamphetamine. Trooper Mulkey's surveillance was integral to corroborating the tip he received from D.S. Regarding the length of time Trooper Mulkey surveilled Defendant Cole's residence, his text messages seem to indicate they exchanged cell phone numbers on November 10, 2023, which was eight days prior to the execution of the search warrant. However, Trooper Mulkey had been communicating with D.S. for at least a month prior to this date and had recently been issued a new department work phone. In his affidavit, Trooper Mulkey wrote that he had been surveilling Defendant Cole's residence for *approximately* two weeks, which is an accurate representation. Trooper Mulkey had been surveilling the area around Defendant Cole's residence for weeks prior to the execution of the search warrant investigating narcotics trafficking and burglaries in the area. Assuming Trooper Mulkey only surveilled Defendant Cole's residence for eight days prior to the execution of the warrant instead of 14, his use of the word "approximately" provides a sufficient margin to characterize the assertion as an innocent oversight

as opposed to a deliberate falsehood or reckless misstatement. Importantly, a *Franks* hearing is required only when a permissible inference is drawn that the omission of material information was either intentional or reckless or that an informant was not credible. While Trooper Mulkey may have mistakenly included in the affidavit that he surveilled Defendant Cole's residence for two weeks, this amounts to at most negligence or an innocent mistake, which is insufficient to trigger a *Franks* hearing.

      *Affidavit Lacking Indicia of Probable Cause*

In the context of an officer's unreasonable reliance on a search warrant lacking indicia of probable cause, the standard is whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. Under this standard, when the search warrant affidavit is devoid of factual support, an officer cannot be said to have relied on the warrant in good faith. *Corral-Corral*, 899 F.2d at 939. When evaluating whether the good faith exception applies, the Tenth Circuit classifies defective search warrants affidavits that do not establish a "substantial nexus" between the illegality and the place to be searched into two categories: (1) affidavits establishing a "minimal nexus" between the illegality and the place to be searched, and (2) "bare bones" affidavits, which fail to provide any connection between the place subject to search and the suspected criminal activity. *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), *United States v. Danhauer*, 229 F.3d 1002 (10th Cir. 2000). The Tenth Circuit held that "good faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established." *Gonzales*, at 1231. The *Gonzales* Court reasoned that for good faith to exist, there must be some factual basis connecting the place to be searched to the defendant or suspected criminal activity. When this connection is wholly absent, the affidavit and resulting warrant are so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable. *Id*. at 1229.

Assuming *arguendo* Trooper Mulkey's affidavit failed to establish a substantial nexus between the illegality and Defendant Cole's residence, the affidavit certainly established a minimal nexus. In reviewing the four corners of his affidavit, Trooper Mulkey alleged that a named informant, D.S., told him from personal observation that Defendant Cole was trafficking narcotics out of the Premises, and that he possessed approximately 100 to 200 illegal firearms inside the Premises. Trooper Mulkey wrote in the affidavit that D.S. told him he had purchased illegal drugs from Defendant Cole at the Premises on "numerous occasions" and gave Defendant Cole a stolen motorcycle at the Premises in exchange for methamphetamine on or around November 1, 2023, which was 17 days prior to the execution of the search warrant. Importantly, this information was corroborated by Trooper Mulkey's own surveillance of Defendant Cole and the Premises, during a two-week period leading up to the execution of the search warrant. Additionally, Trooper Mulkey's inventory of Defendant Cole's vehicle resulted in the seizure of a trafficking amount of methamphetamine and multiple firearms, which corroborated D.S.'s tip that Defendant Cole was trafficking methamphetamine. The information contained in the affidavit provides at least a minimal nexus between the illegality and Defendant Cole's residence, and Trooper Mulkey was warranted to rely in good faith on the warrant signed by the Okmulgee County District Judge. *United States v. Henderson*, 595 F.3d 1198 (10th Cir. 2010) (in recognition of this high standard, we have said that an officer is wholly unwarranted in relying on a warrant only if the affidavit submitted in support of the warrant is devoid of factual support).

## CONCLUSION

The United States respectfully requests this Court to deny Defendant's Motion to Suppress.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/    Michael E. Robinson
MICHAEL E. ROBINSON, MA Bar # 693574
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
Michael.Robinson3@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, I electronically transmitted the attached documents to the Clerk of Court.

| | |
|---|---|
| Rhyder Jolliff | Attorney for Defendant Cole |
| Dan Medlock | Attorney for Defendant Chesser |

s/    Michael E. Robinson
MICHAEL E. ROBINSON
Assistant United States Attorney