IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>JASON DALE COLE &<br>CRYSTAL FAYE CHESSER,<br><br>*Defendant.* | Case No. 24-CR-080 RAW |

**UNITED STATES' RESPONSE TO DEFENDANT COLE'S MOTION TO SUPPRESS**

COMES NOW the United States of America by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Michael E. Robinson and, hereby requests that the Court deny Defendant's motion to suppress [Doc. No. 103] the contraband seized from his vehicle and home on November 18, 2023.

I. FACTS

In the fall of 2023, Trooper Ethan Mulkey of the Oklahoma Highway Patrol began investigating a string of burglaries and narcotics trafficking in the eastern part of Okmulgee County and the western part of Muskogee County. As part of his investigation, Trooper Mulkey would ask questions during traffic stops and other routine police interactions about the recent surge in burglaries and narcotics trafficking in the area. During these interactions, Trooper Mulkey became acquainted with D.S., who became a suspect during a separate investigation into a stolen motorcycle. Trooper Mulkey first became acquainted with D.S. approximately a month to two months prior to the execution of the search warrant on November 18, 2023. D.S. requested assistance from Trooper Mulkey with several pending criminal charges in exchange for providing information about the burglaries and narcotics trafficking in the area. Trooper Mulkey told D.S.

that he would talk to law enforcement and prosecutors on D.S.'s behalf if the information he provided developed into something useful. D.S. then provided Trooper Mulkey with information implicating a man known in the community as "Outlaw" that was engaged in drug trafficking, the unlawful possession of firearms, and possession of stolen property at his residence. Specifically, D.S. told Trooper Mulkey that on or about November 1, 2023, he had taken a stolen motorcycle to Outlaw's residence in Okmulgee as payment for methamphetamine. D.S. did not provide a specific address of Outlaw's residence, but he was able to provide Trooper Mulkey with the general area where Outlaw's residence was located. After receiving this tip, Trooper Mulkey began directing his surveillance on properties that contained a trailer house and outbuilding, consistent with what D.S. had described as Outlaw's residence. As part of his investigation, Trooper Mulkey communicated with locals in the area, as well as a rural water district inspector, which led Trooper Mulkey to identify Outlaw's residence as 20725 Gilmer Road, Okmulgee, Oklahoma. Trooper Mulkey confirmed with D.S. that this was the residence Outlaw lived at, and was the same residence where he exchanged a stolen motorcycle for methamphetamine.

Prior to the attempted traffic stop on November 18, 2023, Trooper Mulkey had started drafting a search warrant affidavit for the 20725 Gilmer Road property based on the tips D.S. had provided him regarding drug trafficking and illegal firearm possession in the residence, as well as his own surveillance. Trooper Mulkey decided to wait until after the Thanksgiving holiday to seek the warrant due to law enforcement manpower restraints around the holiday.

On November 18, 2023, at approximately 6:30 a.m., Trooper Mulkey was on duty patrolling the area of Skelly Road near 214th Street West, in Muskogee County, Oklahoma. Trooper Mulkey observed a red Chevrolet truck traveling westbound on Skelly Road traveling in

the opposite direction going approximately 67 miles per hour in a 45 mile per hour zone.1 Trooper Mulkey turned his patrol vehicle around and caught up to the truck. Trooper Mulkey observed the truck rapidly decrease its speed and travel below the posted speed limit, while continuously traveling over the marked center line of the roadway. Trooper Mulkey activated his emergency lights to conduct a traffic stop of the truck. The driver of the Truck eluded Trooper Mulkey on a high-speed chase and eventually drove into the woods. Trooper Mulkey pursued on foot and ultimately placed the sole occupant of the truck, who was identified as Defendant Cole, under arrest. Trooper Mulkey inventoried the truck and seized two loaded pistols, a loaded extended magazine, and approximately a half pound of a white, crystal-like substance, packaged for distribution, which was ultimately confirmed to be methamphetamine. Based on the tips provided by D.S., his surveillance of Defendant Cole's residence, and the contraband seized during the inventory, Trooper Mulkey applied for a search warrant to search Defendant Cole's premises located at 20725 Gilmer Road, Okmulgee, Oklahoma. The search warrant was granted by Judge Pandee Ramirez of the Okmulgee County District Court. The search of Defendant Cole's premises resulted in the seizure of over three kilograms of methamphetamine, multiple firearms and ammunition, as well as drug paraphernalia. Defendant Cole's girlfriend, Defendant Chesser, lives with Defendant Cole in the residence.

  Several hours after the inventory of the truck, at approximately 11:30 a.m., Trooper Mulkey, deputies from the Okmulgee County Sheriff's Office, and agents with the ATF executed the search warrant for Defendant Cole's property located at 20725 Gilmer Road, Okmulgee, Oklahoma. The property consisted of a residence and an outbuilding. While securing the premises, law enforcement discovered Defendant Chesser in the master bedroom in bed with a

---

1 On a recorded call on December 3, 2023, Defendant Cole admits to a friend that he was speeding because someone behind him was riding on his bumper.

loaded rifle and pistol. On the nightstand adjacent to the bed, law enforcement found a loaded revolver and Defendant Chesser's identification card. Law enforcement seized approximately 60 grams of methamphetamine from a black bag that was located in a kitchen cabinet. The deed to 20725 Gilmer Road shows that the property was purchased by Defendant Cole and Defendant Chesser on April 6, 2023.

During the search of the outbuilding, law enforcement seized several kilograms of suspected methamphetamine, approximately $10,000 in United States currency, multiple firearm suppressors, multiple firearms, over two hundred pounds of various calibers of ammunition, multiple scales used for drug distribution, and a piece of mail addressed to Defendant Cole. In a post-*Miranda* interview, Defendant Chesser revealed to Trooper Mulkey that Defendant Cole is the only person with access to the outbuilding, and that the majority of the contraband belonged to Defendant Cole. Trooper Mulkey also interviewed Defendant Cole's son, A.M. After waiving his *Miranda* rights, A.M. stated that Defendant Cole is the only person with a key to the lock that was on the outbuilding.

## ARGUMENT

*Attempted Traffic Stop*

A traffic stop is justified when the officer has "reasonable suspicion-that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." *United States v. Gomez-Arzate*, 981 F.3d 832, 838 (10th Cir. 2020). In this case, on November 18, 2023, Trooper Mulkey observed a Chevrolet truck traveling in the opposite direction on Skelly Road in Muskogee County traveling 67 miles per hour in a 45 mile per hour zone, which is a violation of 47 OK Stat § 11-801 (2024)2. As depicted on his dashcam,

---

2 In a recorded call on December 3, 2023, Defendant Cole admits to speeding prior to the attempted traffic stop.

Trooper Mulkey turned his vehicle around and began to pursue the truck. Trooper Mulkey observed the driver of the truck continuously fail to maintain his lane, in violation of 47 OK Stat § 11-309 (2024). After observing multiple traffic violations, Trooper Mulkey had reasonable suspicion that Defendant Cole had violated multiple traffic laws and was justified in attempting to initiate a traffic stop. *United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995) (holding the sole inquiry for purposes of a Fourth Amendment review of a traffic stop is whether the officer had reasonable suspicion that the motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction).

*Search of Defendant Cole's Truck*

As documented on Trooper Mulkey's dashcam, Defendant Cole did not yield to Trooper Mulkey's lights and sirens. Instead, Defendant Cole led Trooper Mulkey on a high-speed chase down a dirt road into Okmulgee County. The pursuit ended when Defendant Cole drove his truck into a wooded area. Trooper Mulkey exited his patrol vehicle and pursued the truck on foot as it went deeper into the woods. Trooper Mulkey observed Defendant Cole getting out of the truck. Trooper Mulkey yelled for Defendant Cole to put his hands up. Trooper Mulkey placed Defendant Cole under arrest and looked into the truck to see if there were any other occupants. Trooper Mulkey observed two pistols in plain view on the front floorboard of the truck. After placing Defendant Cole into custody, Trooper Mulkey conducted a search of the truck and seized two pistols, various types of ammunition, and a loaded, extended round magazine. In the passenger seat of the truck, Trooper Mulkey seized a Crown Royale bag containing approximately a half pound of methamphetamine that was packaged for distribution.

*Automobile Exception*

Under the automobile exception to the Fourth Amendment's warrant requirement,

officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant. *United States v. Bradford*, 423 F.3d 1149 (10th Cir. 2005). Probable cause to search a vehicle is established, if under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence of a crime. *United States v. Vasquez-Castillo*, 258 F.3d 1207 (10th Cir. 2001). The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity. *Harman v. Pollock*, 586 F.3d 1254 (10th Cir. 2009). Where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798 (1982).

      When Trooper Mulkey approached Defendant Cole and looked into the truck to see if there were any other occupants, he saw two pistols on the front floorboard of the truck. Trooper Mulkey recognized the truck from his surveillance of Defendant Cole's residence, and he knew from tips from an informant D.S. that Defendant Cole was a convicted felon who had firearms at his residence. Trooper Mulkey had also previously conducted a criminal background check on Defendant Cole and knew that he was a convicted felon. Therefore, at the time he looked into the truck to see if there were any other occupants, Trooper Mulkey immediately recognized the pistols he could see in plain view as being contraband. Thus, Trooper Mulkey had probable cause to seize the firearms that he could see in plain view on the floorboard. After seeing the firearms, ammunition, and magazines in plain view in the truck, Trooper Mulkey had probable cause to search the remainder of the truck for the unlawful possession of firearms and

ammunition, which justified his search of the Crown Royale bag that contained a half pound of methamphetamine.

*Inventory*

When a vehicle is not impeding traffic or impairing public safety, impoundments are constitutional only if guided by both standardized criteria and a legitimate community-caretaking rationale. *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015). The touchstone of the inquiry into whether an impoundment is lawful is the existence of standardized criteria. *Id*. at 1249. A police department policy may grant police discretion over whether to impound and inventory a vehicle so long as officers exercise that discretion according to standardized criteria, and not in bad faith or for the sole purpose of investigation. *United States v. Taylor*, 592 F.3d 1104 (10th Cir. 2010). In addition, impoundment must be reasonable, not pretextual, and justified by a legitimate community caretaking rationale. *Sanders*, 796 F.3d at 1243. In evaluating whether an impoundment is justified by a legitimate community-caretaking rationale, courts consider the following, non-exclusive factors: (1) whether the vehicle is on public or private property, (2) if on private property, whether the property owner has been consulted, (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle), (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment. *Id*. at 1245.

In this case, an inventory of the truck would have been according to standardized criteria as delineated in the Oklahoma Highway Patrol impound policy. In pertinent part, Troopers have the authority under the policy to impound a vehicle when "it is to be held as evidence of a crime committed" and when "the person driving or in control of such vehicle is arrested and taken into custody." In this case, Trooper Mulkey observed Defendant Cole use the truck during the

commission of a crime –eluding – in violation of 21 OK Stat § 540, and Defendant Cole was the sole occupant of the vehicle and was taken into custody. Under these criteria, Trooper Mulkey was justified in impounding the truck. Since Defendant Cole had driven the truck into a heavily wooded area and was the sole occupant of the truck, Trooper Mulkey had no choice but to impound the truck. Given the circumstances, the decision to impound the truck was made out of necessity as opposed to bad faith or as pretext for a warrantless search.

Similarly, several of the *Sanders* factors weigh in favor of a lawful impoundment of Defendant Cole's truck. Specifically, since there was no other occupant in the truck and Defendant Cole had been placed under arrest, there was no alternative to impounding the truck. Additionally, the truck was used in the commission of the crime of eluding. The first two factors, which pertain to whether the vehicle was on public or private property are neutral in this case. In attempting to elude Trooper Mulkey, Defendant Cole likely drove his truck onto someone else's property. Given the totality of the circumstances, including the time of morning and how rural the area is, it would not have been feasible for Trooper Mulkey to have consulted with the property owner prior to impounding the vehicle. Additionally, since the attempted traffic stop occurred on a Saturday morning at approximately 6:30 a.m., Trooper Mulkey would not have been able to contact the Oklahoma County Assessor or the County Clerk to ascertain who owned the woods that Defendant Cole drove into in order to consult them about the decision to impound the truck.

*Search of Residence*

The United States has responded to Defendant Chesser's motion to suppress, which Defendant Cole has adopted. The search warrant signed by Okmulgee County Judge Pandee Ramirez commanded Trooper Mulkey to search the property of 20725 Gilmer Road, to include

the "curtilage" and "appurtenances" on the property. Defendant Cole argues that since the term "outbuilding" is not specifically listed in the search warrant, the search of Defendant Cole's outbuilding exceeded the scope of the warrant.

The term "appurtenance" is defined in Black's Law Dictionary as "that which belongs to something else; an adjunct; an appendage; something annexed to another thing more worthy as principal, and which passes incident to it." The examples of appurtenance provided in the definition are "out-house, barn, garden, or orchard, to a house or messuage." The term "curtilage" is defined in pertinent part as "all the space of ground and *buildings thereon* (emphasis added) which is usually enclosed within the general fence immediately surrounding a principal messuage *and outbuildings* (emphasis added), and yard closely adjoining to a dwelling-house." Trooper Mulkey included a photograph of Defendant Cole's residence in his application for the search warrant, and the "outbuilding" is visible along with the main residence. The terms "appurtenances" and "curtilage" are sufficiently broad to encompass the search of Defendant Cole's outbuilding, regardless of whether the appropriate architectural classification of the structure is a shed, barn, garage, or outbuilding.

## CONCLUSION

The United States respectfully requests this Court to deny Defendant's Motion to Suppress.

        Respectfully submitted,

        CHRISTOPHER J. WILSON
        United States Attorney

s/    Michael E. Robinson
        MICHAEL E. ROBINSON, MA Bar # 693574
        Assistant United States Attorney
        520 Denison Avenue
        Muskogee, Oklahoma 74401
        Telephone: (918) 684-5100
        Michael.Robinson3@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 29, 2025, I electronically transmitted the attached documents to the Clerk of Court.

    Rhyder Jolliff and Barbara Woltz, Attorneys for Defendant

                                             s/     Michael E. Robinson
                                                   MICHAEL E. ROBINSON
                                                   Assistant United States Attorney