IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. CR-24-080-RAW |
| ) | |
| CRYSTAL FAYE CHESSER, ) | |
|     *Defendant.* ) | |

**DEFENDANT CRYSTAL FAYE CHESSER'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

COMES NOW the Defendant, Crystal Faye Chesser, by and through her attorney, Dan Medlock, and submits this supplemental brief following the evidentiary hearing held on May 6, 2025. The testimony elicited at this hearing unequivocally demonstrates that the search warrant for Ms. Chesser's residence was constitutionally deficient on multiple grounds, mandating suppression of all evidence seized and statements obtained as a result of this illegal search.

The hearing record reveals a warrant procured through: (1) material omissions regarding the informant's credibility and motivation; (2) inadequate corroboration of the informant's claims; (3) material misrepresentations in the affidavit; and (4) reliance on fruits of an illegal vehicle search. Each of these deficiencies, independently and collectively, renders the warrant constitutionally infirm and the ensuing search unlawful under the Fourth Amendment.

**FACTUAL BACKGROUND**

The search warrant in question was primarily based on information provided by a single informant, identified as D.S. The evidentiary hearing revealed critical facts about D.S. and the investigation that were deliberately omitted from the Search Warrant Affidavit ("Affidavit"):

1. D.S. was actively seeking leniency on multiple pending criminal charges in exchange for providing information against Mr. Cole (Tr. 74:4-76:5; 154:18-21).

1

2. D.S. has a history of approximately twelve felony convictions for crimes of dishonesty, con games, and drug cases (Tr. 148:22-149:1), which Trooper Mulkey knew but chose not to include in the affidavit (Tr. 149:2-4).

3. Trooper Mulkey initially considered designating D.S. as a confidential informant but decided against it because he "didn't think there was enough for [D.S.] to be confidential" (Tr. 157:19-158:4), revealing Trooper Mulkey's own doubts about D.S.'s credibility.

4. Despite conducting surveillance for approximately two weeks, Trooper Mulkey testified that this surveillance did not detect any illegal or unlawful activity (Tr. 152:3-5) but was merely useful in confirming the residence and who was living at the residence.

5. Based on D.S.'s directions, Trooper Mulkey initially conducted surveillance on the wrong house (Tr. 70:10-71:8) and had to get assistance from the water department to locate Mr. Cole's actual residence (Tr. 71:8-12).

## THE AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE

**A. Material Omissions Regarding the Informant's Credibility**

The Fourth Amendment demands that no warrant shall issue except upon a showing of probable cause supported by oath or affirmation. This bedrock constitutional principle was violated when Trooper Mulkey presented a sanitized affidavit that deliberately concealed critical impeachment information about the government's primary informant, D.S.

Trooper Mulkey consciously withheld from the magistrate that D.S. was actively seeking leniency on multiple pending criminal charges in exchange for providing information against Mr. Cole. Trooper Mulkey explicitly testified that D.S. was seeking assistance with pending criminal charges in exchange for information on Mr. Cole. (Tr. 74:4-76:5; 154:18-21).

This Court need not speculate about whether the omissions regarding D.S.'s credibility were material to the magistrate's probable cause determination. Trooper Mulkey's own testimony demonstrates he recognized the significant impeachment value of this information. Trooper Mulkey testified that he initially considered designating D.S. as a confidential informant but ultimately decided against it because he "didn't think there was enough for [D.S.] to be confidential." (Tr. 157:19-158:4). This admission reveals that Trooper Mulkey himself evaluated D.S.'s credibility and found it questionable enough to disqualify him from confidential informant status. However, Trooper Mulkey deliberately withheld this same credibility assessment from the magistrate judge.

By naming D.S. in the affidavit while simultaneously concealing D.S.'s motivation to fabricate information in exchange for leniency, Trooper Mulkey engaged in precisely the type of selective disclosure that undermines the integrity of the warrant process. Trooper Mulkey's conscious decision-making about what information to disclose about D.S. demonstrates both his awareness of the information's materiality and his deliberate choice to deprive the magistrate of critical facts necessary for an informed probable cause determination.

The Supreme Court has unequivocally held that material omissions that would undermine a finding of probable cause can invalidate a warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). Here, the informant's substantial motivation to fabricate or exaggerate information in exchange for prosecutorial benefits was precisely the type of material information that any neutral magistrate would require to make an informed probable cause determination.

Further undermining D.S.'s credibility, Trooper Mulkey acknowledged that he was fully aware of D.S.'s lengthy criminal history. (Tr. 100:21-23; 148:13-21). D.S. has a history involving approximately twelve felony convictions for crimes of dishonesty, con games, and drug cases. (Tr.

148:22-149:1). Even knowing D.S.'s history, Trooper Mulkey deliberately chose not to include this critical credibility information in the affidavit. (Tr. 149:2-4). By concealing this information, Trooper Mulkey prevented the magistrate from conducting the proper "totality of the circumstances" analysis required under *Illinois v. Gates*, 462 U.S. 213 (1983).

The materiality of these omissions is magnified by the prosecution's heavy reliance on D.S.'s uncorroborated claims. While acknowledging that D.S. purportedly described seeing what he characterized as "one hundred to two hundred guns" at the residence, Trooper Mulkey admitted that the subsequent search revealed no such arsenal, thus confirming D.S.'s propensity for exaggeration or fabrication. (Tr. 100:9-15). This post-search revelation further demonstrates the critical importance of the magistrate having had complete information about D.S.'s credibility and motivations.

**B. Inadequate Independent Corroboration**

Where information comes from an informant of questionable reliability, particularly one with an extensive criminal history seeking leniency on pending charges, adequate independent corroboration becomes constitutionally essential. Here, the government's claimed "corroboration" was illusory at best.

Despite conducting surveillance for approximately two weeks, Trooper Mulkey testified that this surveillance did not detect any illegal or unlawful activity (Tr. 152:3-5) but was merely useful in confirming the residence and who was living at the residence. In other words, the surveillance corroborated only innocent, non-incriminating facts; the location of the residence and its occupants. Courts have consistently held that confirmation of innocent details provides minimal corroborative value. *See Alabama v. White*, 496 U.S. 325, 332 (1990).

The inadequacy of this "corroboration" is further underscored by Trooper Mulkey's concession that his surveillance never actually observed suspicious activity consistent with drug trafficking. When asked directly whether the surveillance produced anything of evidentiary value, Trooper Mulkey responded, "well, yes, that's correct." (Tr. 151:16-20). Indeed, he acknowledged that in his surveillance of the house "it was not a high traffic area of people coming and going like you would normally see with a drug house." (Tr. 151:21-24).

Trooper Mulkey was not able to corroborate D.S.'s claim that he had been to the home on "numerous occasions" as is stated in the Affidavit. The evidence actually revealed that D.S. had only been to the residence two times (Tr. 67:18-19) or at most "two or three times" (Tr. 148:2).

Furthermore, D.S. was unable to provide Trooper Mulkey with an address of Mr. Cole's house but gave Trooper Mulkey only the "whereabouts or the approximate location." (Tr. 152:8-10). Trooper Mulkey testified that he "wouldn't expect a guy who has been somewhere two to three times to know in detail how to get out somewhere." (Tr. 152:12-19-21). Trooper Mulkey further testified that this was "why it is important for [him] to corroborate it." (Tr. 152:21-22). Most tellingly, based on D.S.'s directions, Trooper Mulkey actually conducted surveillance on the wrong house and had to get the assistance of the water department to even find Mr. Cole's house (Tr. 70:10-71:12). This fact unequivocally demonstrates that D.S. was an unreliable source of information.

**C. Material Misrepresentations in the Affidavit**

In addition to material omissions, the affidavit contained affirmative misrepresentations that further undermined its reliability as a basis for probable cause. The evidentiary hearing revealed a troubling pattern of systematic exaggeration by Trooper Mulkey, who consistently inflated and embellished the limited information he possessed to create an illusion of probable

5

cause where none existed. From characterizing two or three visits as "numerous occasions" (Tr. 148:9-11), to implying specific knowledge of a crash location that D.S. never provided (Tr. 146:19-23), to suggesting robust surveillance findings when his own testimony confirmed that nothing of evidentiary value was observed (Tr. 151:16-20), Trooper Mulkey demonstrated a clear pattern of misrepresentation designed to manufacture probable cause. This calculated pattern of exaggeration permeated the entire affidavit, rendering it fundamentally misleading to the magistrate who relied upon Trooper Mulkey's sworn statements. Courts have consistently held that such deliberate inflation of facts to secure a warrant cannot be allowed under the Fourth Amendment. *See Franks*, 438 U.S. at 164-165 (noting that the Constitution does not permit warrants to be issued on deliberately false information).

> In the Affidavit, Trooper Mulkey stated:
>
> Your Affiant states he received information from [D.S.] that a stolen Suzuki Enduro motorcycle was delivered the above-mentioned location on or around November 1st, 2023. The motorcycle was described as black and gray dirt-bike style motorcycle with sports-bike style tires on the wheels. That motorcycle was involved in a crash that occurred on 161st Street near 225th East Avenue, in Wagoner County, Oklahoma, which went unreported to the Oklahoma Highway Patrol. That same motorcycle was reportedly stolen from Tulsa, Oklahoma.

When questioned about this statement, Trooper Mulkey's testimony revealed numerous inaccuracies and misrepresentations:

1. When asked if D.S. gave him a specific address of the motorcycle crash, Trooper Mulkey testified "[n]o, no, he didn't disclose that. He just said he knew that it had been involved in a crash because of the damage that was done to it." (Tr. 146:19-23). Yet the affidavit specifically cited "161st Street near 225th East Avenue" as the crash location.

2. When asked where this specific crash location information came from, Trooper Mulkey testified that it came from his dispatch center (Tr. 147:5-8), not from D.S. as implied in the affidavit.

3. Trooper Mulkey initially testified that he had no way to corroborate whether the information about the stolen motorcycle was accurate, yet later claimed he verified aspects of the story through dispatch.

The affidavit was also materially misleading concerning the temporal proximity of the alleged criminal activity. While D.S. allegedly told Trooper Mulkey that he had been to Mr. Cole's on "numerous occasions purchasing drugs," D.S. did not give him any specific dates of when he was at Mr. Cole's house. (Tr. 158:5-9). D.S. also allegedly told Trooper Mulkey that he "had observed one hundred to two hundred firearms" when he was at Mr. Cole's house, but the only time frame that D.S. provided Trooper Mulkey was "anywhere from the last seven to fourteen days that he had been over there and that's when he had seen them." (Tr. 158:10-18). This information was not included in the Affidavit. (Tr. 158:19-23). This lack of critical timeframe information was a material omission from the Affidavit. Without this temporal context, the magistrate had no way to assess whether the information was too stale to support probable cause.

Another significant misrepresentation concerned D.S.'s familiarity with the residence. The affidavit characterized D.S. as having been to the residence on "numerous occasions." Trooper Mulkey testified that he considered it to be numerous occasions even though it was only two or three times. (Tr. 148:9-11). Merriam-Webster dictionary defines numerous as "consisting of great numbers of units or individuals."[1] This mischaracterization significantly inflated D.S.'s purported familiarity with the residence and, by extension, the reliability of his information.

---

[1] Numerous, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/numerous (last visited May 19, 2025).

## THE GOOD FAITH EXCEPTION SHOULD NOT APPLY

The government cannot seek refuge in the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897 (1984). The Supreme Court has explicitly held that this exception does not apply when the affidavit contains "material omissions" that mislead the magistrate judge. *See Franks v. Delaware*, 438 U.S. 154 (1978).

As detailed above, Trooper Mulkey's pattern of systematic exaggeration and deliberate omission of critical information regarding the informant's extensive criminal history, his explicit "quid pro quo" arrangement, and his obvious motivation to fabricate information in exchange for leniency constitutes precisely the type of material omission that precludes good faith reliance. No reasonably well-trained officer could have believed that concealing this crucial credibility information from the magistrate was constitutionally permissible.

Moreover, the good faith exception is inapplicable when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Here, the complete absence of meaningful corroboration of the informant's claims, coupled with the affiant's reliance on illegally obtained evidence, renders the affidavit precisely the type of "bare bones" document that falls outside the good faith exception.

## CONCLUSION

The Fourth Amendment stands as a safeguard against unreasonable governmental intrusion, requiring that warrants issue only upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched. The warrant in this case failed on each of these constitutional dimensions.

The evidence reveals not mere technical violations, but substantial constitutional infirmities that strike at the core of Fourth Amendment protections. These violations cannot be

saved by the good faith exception, as they stem from deliberate omissions and reliance on illegally obtained evidence that no reasonable officer could have believed lawful.

For these reasons, Ms. Chesser respectfully requests that this Court grant her Motion to Suppress and suppress all evidence seized from 20725 Gilmer Road and any statements obtained from Ms. Chesser during or following the execution of this constitutionally deficient warrant.

Respectfully submitted,

s/ Dan Medlock
Dan Medlock, OBA #20092
Attorney for Defendant Chesser
555 W. Okmulgee
Muskogee, OK 74401
(918) 912-2000 phone
dan@medlocklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: Michael Robinson / Jarrod Leaman, Assistant United States Attorneys; and Rhyder Jolliff / Barbara Woltz, Attorneys for Jason Cole.

s/ Dan Medlock
Dan Medlock
Attorney for Defendant Chesser