IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>JASON DALE COLE &<br>CRYSTAL FAYE CHESSER,<br><br>    *Defendant.* | Case No. CR-24-80 RAW |

### UNITED STATES' RESPONSE TO DEFENDANT CHESSER'S POST-HEARING BRIEF

COMES NOW the United States of America, by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Michael E. Robinson, and hereby submits this response to Defendant Chesser's Post-Hearing Brief (hereinafter "Supplemental Brief," Doc. No. 128). The United States requests that the Court deny the Defendants' motion to suppress.

### FACTS

For purposes of this Response to the Supplemental Brief, the United States incorporates Part I (Background) and Part II (Facts Alleged in the Affidavit) from the Government's Response to Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant (Doc. No. 99).

### ARGUMENT

In the Supplemental Brief, Defendant Chesser argues that the search warrant for her residence was constitutionally deficient on multiple grounds because Trooper Mulkey's search warrant affidavit contained (1) material omissions regarding the informant's credibility and motivation, (2) inadequate corroboration of the informant's claims, and (3) material

misrepresentations in the affidavit. The Supplemental Brief also alleges the affidavit relied on the fruits of an illegal vehicle search.

*Material Omissions*

In the Supplemental Brief, Defendant Chesser takes issue with Trooper Mulkey neglecting to include details about his arrangement with the informant, D.S., in his search warrant affidavit. In exchange for providing information about narcotics trafficking in the eastern part of Okmulgee County, Trooper Mulkey told D.S. he would speak to law enforcement and prosecutors on D.S.'s behalf concerning his pending criminal cases if the information he provided developed into something useful. The Supplemental Brief also alleges that Trooper Mulkey deliberately chose not to include any reference to D.S.'s lengthy criminal history. The Supplemental Brief argues that Trooper Mulkey's failure to include D.S.'s motivation to provide information and the failure to include details about D.S.'s criminal history constitute material omissions that would have altered the magistrate's probable cause analysis. Defendant Chesser further argues that the validity of the search warrant relies heavily on D.S.'s uncorroborated claims.

Trooper Mulkey testified at the suppression hearing that prior to his attempted traffic stop of Defendant Cole on November 18, 2023, he had already begun preparing a search warrant affidavit for Defendant Cole's residence based on the tips he received from D.S. Trooper Mulkey testified that after placing Defendant Cole into custody in his patrol vehicle, he had a telephone call with the Assistant District Attorney ("ADA") from Okmulgee County that was helping him prepare the search warrant affidavit. Trooper Mulkey intended to present the search warrant affidavit after the Thanksgiving holiday due to manpower restraints but was advised by the ADA to move forward with the warrant that same day after seizing the contraband from Defendant

Cole's truck. Trooper Mulkey testified that after transporting Defendant Cole to the Okmulgee County Jail, he added the events from that morning to his affidavit and worked with the ADA prior to submitting the search warrant affidavit to Okmulgee County District Judge Pandee Ramirez. Time was of the essence, since Trooper Mulkey knew Defendant Cole would have access to phone calls in jail, and it was foreseeable evidence might be destroyed at his residence.

At the suppression hearing, Trooper Mulkey testified that he did not have a lot of experience drafting search warrants. His primary role as a Trooper with the Oklahoma Highway Patrol was to monitor the highways for traffic violations. While Trooper Mulkey neglected to include the details of his arrangement with D.S. in the affidavit, Trooper Mulkey did not present D.S. as a model citizen. For example, Trooper Mulkey's search warrant affidavit implicates D.S. in at least two crimes: possessing a stolen motorcycle and possession of methamphetamine. When making the probable cause determination, the Magistrate Judge knew based on the information Trooper Mulkey provided that D.S. was engaged in criminal undertakings and was a drug user who associated with Defendant Cole, who he describes as a convicted felon who possesses firearms and large quantities of methamphetamine. Similarly, the fact Trooper Mulkey did not divulge in his affidavit D.S.'s motivations of receiving leniency in exchange for the tips he provided is a typical arrangement judges are well aware of. Offers to help informants in exchange for getting information to further an investigation is a routine law enforcement tactic. Omitting the specific arrangement from the affidavit does not rise to the level of intentional or reckless conduct, especially in a circumstance like this where the affidavit specifically references criminal acts made by the informant.

*Inadequate Corroboration*

The Supplemental Brief classifies Trooper Mulkey's corroboration of D.S.'s tips as "illusory." This section of the Supplemental Brief conveniently omits the seizure of two pistols, various calibers of ammunition, an extended magazine, and approximately a half pound of methamphetamine from Defendant Cole's truck on November 18, 2023. The seizure of the contraband from Defendant Cole's truck corroborated D.S.'s tips that Defendant Cole was dealing methamphetamine and was unlawfully possessing firearms.

At the suppression hearing, Trooper Mulkey testified that D.S.'s initial tip included a description of Defendant Cole's residence. D.S. was unable to provide the exact address, but the tip got Trooper Mulkey into the general vicinity of Defendant Cole's residence. Trooper Mulkey then conducted his own investigation and surveillance. At first, Trooper Mulkey began surveilling the wrong house. After realizing the house did not match the description D.S. had provided, Trooper Mulkey went back to D.S. and confirmed it was not Defendant Cole's residence. Trooper Mulkey conducted additional investigation and surveillance, including riding with a Rural Water District inspector, and ultimately found Defendant Cole's residence, and confirmed it was the correct residence with D.S. Trooper Mulkey then conducted surveillance and saw Defendant Cole outside the residence. Trooper Mulkey knew that the man he saw at the residence was Defendant Cole because he had previously pulled up Defendant Cole's driver's license picture and confirmed with D.S. that he was the man who had given D.S. methamphetamine in exchange for a stolen motorcycle on November 1, 2023.

Trooper Mulkey had sufficient corroboration of D.S.'s tips. Trooper Mulkey knew from the search of Defendant Cole's truck after the attempted traffic stop on November 18, 2023, that

Defendant Cole was a drug dealer. A distribution amount of methamphetamine – the same drug that D.S. alleged he bought from Defendant Cole 17 days prior - was in Defendant Cole's truck, along with multiple firearms. Trooper Mulkey knew from his investigation and surveillance where Defendant Cole lived. The contraband seized from Defendant Cole's truck corroborated the tips provided by D.S. and established his reliability.

The Supplemental Brief also alleges that Trooper Mulkey's search warrant affidavit did not provide any specific dates when D.S. was at Defendant Cole's house. However, Trooper Mulkey's search warrant affidavit clearly states that D.S. delivered a stolen motorcycle to Defendant Cole's residence "on or around November 1st, 2023…as payment for methamphetamine." Thus, Trooper Mulkey received a tip from D.S. that Defendant Cole had given him methamphetamine at his residence 17 days prior to the attempted traffic stop, and that Defendant Cole possessed firearms at his residence. The contraband found in Defendant Cole's truck on November 18, 2023, which included a distribution amount of methamphetamine as well as two firearms, various rounds of ammunition, and an extended magazine, corroborated D.S.'s prior tips. Trooper Mulkey's investigation and surveillance confirmed the residence where Defendant Cole lived at, and confirmed the man that he observed at the residence was in fact Defendant Cole. Therefore, Trooper Mulkey's corroboration of D.S.'s tips were sufficient and were certainly not illusory.

## CONCLUSION

In summary, the United States respectfully requests that this Court deny Defendant Chesser's motion to suppress.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney


s/    Michael E. Robinson
      Michael E. Robinson, MA Bar #693574
      Assistant United States Attorney
      520 Denison Avenue
      Muskogee, OK 74401
      (918) 684-5144
      Michael.robinson3@usdoj.gov


**CERTIFICATE OF SERVICE**

    I hereby certify that on May 23, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Rhyder Jolliff
Barbara Woltz
Brian Deer
James Sicking    Counsel for Defendant Cole

Dan Medlock    Counsel for Defendant Chesser


s/    Michael E. Robinson
      Michael E. Robinson
      Assistant United States Attorney