# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA, )** | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CR-24-80-RAW** |
| ) | |
| **JASON DALE COLE and** ) | |
| **CRYSTAL FAYE CHESSER,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Defendants Jason Dale Cole and Crystal Faye Chesser stand charged by way of a ten-count indictment. Chesser stands charged in Count 10 with maintaining a drug-involved premises with a forfeiture allegation, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. Cole is charged with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) (Count 1); possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) & 924(a)(2) (Count 2); felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(8) (Counts 3 & 7); use and carry of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) & 924(c)(1)(B)(ii) (Counts 4 & 9); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) (Count 5); possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(D) (Count 6); possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5845, 5861(d), & 5871 (Count 8), as well as the same charge as Chesser in Count 10.

Defendants move to suppress all evidence obtained pursuant to a traffic stop and subsequent search of their home, and the Court referred the Defendants' motions for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). *See* Docket Nos. 95, 105. The undersigned Magistrate Judge held a suppression hearing on May 6, 2025. *See* Docket No. 122. Following the suppression hearing, Defendants were granted leave to submit supplemental briefing, which they did on May 20, 2025. *See* Docket Nos. 122, 128-129. The Government submitted responses shortly thereafter. *See* Docket Nos. 130-131. For the reasons set forth below, the undersigned Magistrate Judge recommends that Defendant Chesser's Motion to Suppress Evidence and Brief in Support [Docket No. 94] and Defendant Cole's Motion to Suppress and Brief in Support [Docket No. 103] be DENIED.

**Factual Summary**

Oklahoma Highway Patrol ("OHP") Trooper Ethan Mulkey was on duty the morning of Saturday, November 18, 2023. While driving in his normal patrol area in Muskogee County, Oklahoma, Trooper Mulkey observed two vehicles coming from the opposite direction, and immediately recognized one of those vehicles as associated with a person who was the object of a recent drug investigation, Defendant Jason Cole. Docket No. 126, pp. 8-9. He made a U-turn and began following the vehicle, clocking it with his in-car radar as going 67 miles per hour in a 45-mile-per-hour zone. Trooper Mulkey activated his lights, but the vehicle did not stop; he then activated his siren as well, which resulted in a pursuit. *Id.*, pp. 9-10. Before the pursuit began, Trooper Mulkey testified that he confirmed that the vehicle was registered to Cole. *Id.*, p. 11.

Trooper Mulkey testified at the suppression hearing that, in the months leading up to November 18, 2023, he became aware of an unusual increase in property crime in Eastern Okmulgee County and Western Muskogee County, and that he noticed an increase of people present in the area but who lived elsewhere and had drug and firearms convictions. *Id.*, pp. 54-56. In speaking with other officers about this uptick, two other officers informed Trooper Mulkey that Cole had relocated to that area but officers did not know the exact the location. *Id.*, pp. 57-60.

In the meantime, Trooper Mulkey encounters Dustin Secrest during a stolen motorcycle investigation, whom he knew from an earlier DUI traffic stop. Secrest tells Trooper Mulkey and others that the motorcycle was in Cole's possession. *Id.*, pp. 62-65. Secrest gives Trooper Mulkey general directions to Cole's house, but not an exact address. *Id.*, pp. 65-67. In addition to identifying Cole, Secrest tells Trooper Mulkey that Cole did not generally like having people at his house but that Secrest had been there and personally observed "hundreds of guns" and a large amount of drugs on the property. *Id.*, p. 80-81.

Trooper Mulkey then attempted surveillance on Cole's house, first surveilling an incorrect address but ultimately locating the correct residence after driving through the area as a ride-along with the water department. While surveilling the correct house, Trooper Mulkey saw Cole twice, once standing in the yard with Defendant Chesser who had a cow on a leash, and the second time just Defendant Cole standing inside the door of an outbuilding. *Id.*, pp. 68-72. Trooper Mulkey identified Cole through driver's license and Facebook photos, as well as confirmation from Secrest that the person in those photos was

the same person they had been talking about. *Id.*, pp. 72-73, 78-79. During Trooper Mulkey's conversations with Secrest, Secrest asked for help with his DUI charge as well as a case in Lincoln County, Oklahoma, for which Trooper Mulkey agreed to speak on Secrest's behalf and did so. *Id.*, pp. 74-75.[1] Trooper Mulkey credits himself with helping Secrest obtain a "pretty lenient deal" on the DUI charge but was unable to say what effect he ultimately had in the other case. *Id.*, pp. 75-76. During the surveillance, Trooper Mulkey also ran a search on Cole which confirmed that Cole was a convicted felon. *Id.*, p. 17-18, 83-84. On cross-examination, Trooper Mulkey confirmed that he wrote no reports on this investigation and the only evidence of his communications with Secrest was the text messages he had recovered from his state-issued cell phone. *Id.*, pp. 99-100, 108.

Based on this background involving Secrest and his surveillance of Cole's residence, Trooper Mulkey recognized Cole's vehicle and knew of his status as a convicted felon at the time he first attempted the November 18, 2023 traffic stop. During the pursuit and while still in Muskogee County, Cole exited the main road onto a gravel road that extended into Okmulgee County and then turned off the roadway to drive through the woods. *Id.*, pp. 19-20. Trooper Mulkey was unable to follow through the woods in his patrol vehicle, and began pursuing Cole on foot, leaving his patrol vehicle after retrieving his rifle. *Id.*, p. 20.

---

[1] Only some of those communications were preserved. Trooper Mulkey testified that he was able to recover some of their text communications, but that approximately a week of the text messages were lost due to a technology upgrade on the OHP cell phones occurring close in time. Trooper Mulkey also testified that most of his communications with Secrest were conducted over the phone. Docket No. 126, pp. 73-80.

Arrest and Vehicle Search. While following on foot, Trooper Mulkey caught up to Cole, who had stopped his vehicle and pulled it by a tree in a way Trooper Mulkey interpreted as an attempt to disguise it. *Id.*, p. 22. Trooper Mulkey, with rifle drawn, approached the driver's side of the vehicle from the rear as Cole was exiting it. *Id.*, p. 23; Dfdt. Hr'g Ex. 2, p. 5 ("Mulkey observed the driver, who Mulkey positively identified as [Cole], exit the vehicle."). Trooper Mulkey announced his presence, and Cole turned around to face the Trooper. Following directions, Cole went to the back of the vehicle and followed commands to get on the ground. After communicating with dispatch, Trooper Mulkey slung his rifle on his back, placed his boot then his knee on Cole's back, then handcuffed him. Docket No. 126, pp. 25-26. Trooper Mulkey patted Cole down for weapons, then turned his attention to Cole's vehicle. *Id.*, p. 27.

Trooper Mulkey's report,[2] dated November 18, 2023, states the following:

> Mulkey took Cole into custody and conducted an inventory of Cole's vehicle for impoundment. Mulkey located two loaded pistols in the front floorboard of the pickup, along with numerous amounts of ammunition and extended round magazine for pistols and rifles that were loaded. Mulkey located one of the loaded pistols in the driver's side floorboard on [sic] the vehicle next to the gas pedal. In the passenger seat was a crown royal bag containing approximately a half pound of methamphetamine.

Dfdt. Hr'g. Ex. 2, p. 5. Mulkey testified that he approached the vehicle from the rear, that the front driver's side door was "wide open," and that he first opened the rear door to check for passengers. Docket No. 125, pp. 27-28. He testified that, after clearing the back seat,

---

[2] This report contains Trooper Mulkey's summary of all events the entire day involving Defendants Cole and Chesser, including the pursuit, arrest, vehicle search, and eventual execution of search warrant on Defendants' property. Dfdt. Hr'g Ex. 2, pp. 4-7.

he observed a pistol in plain view on the floorboard of the front driver's seat, next to the gas pedal. *Id.*, p. 29. He located a second gun on the floorboard of the front passenger side, then opened the Crown Royal bag and found drugs, and later found a couple of standard magazines that could hold approximately 30 rounds of ammunition. *Id.*, pp. 30-31. Trooper Mulkey testified that his sighting of the pistol in plain view on the driver's side gave him probable cause to search the rest of the vehicle, but also testified and acknowledged that he "classified" the search as an inventory search in his report. *Id.*, p. 31-33. During the entirety of the search, Trooper Mulkey took no photographs of the location(s) of any of the evidence, *id.*, pp. 117-118, instead gathering it up, even removing the drugs from the Crown Royal Bag, and placing the items he considered evidence in the locker of his patrol car. Trooper Mulkey later directly surrendered these items to ATF Agent Lucas Keck. *Id.*, p. 38, 114-116. ATF Agent Keck interviewed Trooper Mulkey on April 29, 2025, at which time Mulkey informed Keck that he heard a "thunk" as Cole exited his vehicle, that Cole left the driver's side door open and moved towards the rear of the vehicle, and that Mulkey observed the first pistol in plain view. *Id.*, pp. 122-123 & Dfdt. Hr'g Ex. 13.

When asked about whether an inventory search was later conducted by another officer, Trooper Mulkey testified that Trooper Will Landshaft conducted an inventory search, Docket No. 126, p. 43, but on cross-examination he asserted that both he and Trooper Landshaft completed a Stored Vehicle Report but he has no access to it and the system on which it was stored is obsolete and inaccessible. *Id.*, pp. 111-113. He then

6

agreed that there was no Stored Vehicle Report.  When asked about evidence, particularly the Crown Royal Bag, he testified that he did not know what happened to it because "it is not of any evidentiary value to me."  *Id.*, pp. 113-114.  He further testified that Troopers reported back to him that there were no other items of evidentiary value in the vehicle and that law enforcement did not keep the vehicle for further investigation.  *Id.*, pp. 119-120.

Search Warrant.  Following Cole's arrest, Trooper Mulkey transported him to Okmulgee County Jail and began work on obtaining a search warrant for Cole's residence. *Id.*, pp. 43-44.  Trooper Mulkey had started drafting one before November 18, 2023, but had delayed finalizing it due to manpower restrictions, the upcoming Thanksgiving holiday, and a desire to collect additional information.  *Id.*, p. 45.  Trooper Mulkey testified that the information from Secrest and other law enforcement officers about Cole being in the area was corroborated by his traffic stop of Cole on November 18, 2023, during which he found methamphetamine, guns, and ammunition.  *Id.*, pp. 85-86.  He then drafted an affidavit for a search warrant, which was approved by a state District Attorney, then submitted it to an Okmulgee County District Judge who authorized and signed it.  *Id.*, pp. 86-87.

The relevant portion of the search warrant authorized a search of Cole's residence as follows: "[T]he place so named and described, including the curtilage, vehicles thereof and the appurtenances belonging thereto, for the property or tangible items so specified herein[.]"  Dfdt Hr'g ex. 11, p. 3.  Upon execution of the search warrant, law enforcement officers recovered firearms and methamphetamine from the house, as well as

approximately $10,000 in U.S. currency, 6.5 kilograms of methamphetamine, six firearm suppressors, "numerous rifles, pistols," scales for drug distribution, suspected fentanyl, 25 pounds of marijuana, and miscellaneous firearms parts. Dfdt. Hr'g Ex. 2, p. 6.

### Analysis

Defendants challenge the warrantless search of Defendant Cole's truck and the validity of the search warrant for the residence that followed, as well as Trooper Mulkey's overall credibility. Defendants therefore seek to suppress: (i) all evidence seized from the search of his truck, (ii) all evidence seized pursuant to the search warrant, and (iii) and Defendant Chesser's statements made during the search of the residence.

### I.    Traffic Stop

Although Defendant does not appear to challenge the traffic stop itself, it is important to address it in the context of the events that followed. The undersigned Magistrate Judge thus first finds that the traffic stop was justified at its inception. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "A traffic stop, however brief, constitutes a seizure within the meaning of the Fourth Amendment, and is therefore only constitutional if it is 'reasonable.'" *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (*quoting Delaware v. Prouse,* 440 U.S. 648, 653 (1979)). Here, Trooper Mulkey's decision to stop Cole's vehicle was justified at the inception because Trooper Mulkey confirmed Cole was speeding before attempting to pull him over. This was sufficient to justify a traffic stop.

*See United States v. Whitley*, 680 F.3d 1227, 1232 (10th Cir. 2012) ("[W]e often state that a traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction[.]") (quotation marks and citation omitted).  The justification for arrest arose after Cole eluded Trooper Mulkey.  *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) ("A police officer may arrest a person without a warrant if he [or she] has probable cause to believe that person committed a crime."); *see also, e.g.*, 21 Okla. Stat. § 540A(A) (eluding a peace officer is a misdemeanor in the absence of conduct endangering others or resulting in great bodily injury to another).

A.  *Search of Defendant Cole.*

Trooper Mulkey testified that as soon as he arrived at Cole's vehicle, he approached the driver's side of the vehicle and, weapon drawn, immediately ordered him to the back of the vehicle and on the ground.  Cole complied, at which time Trooper Mulkey placed him in handcuffs and performed a pat-down search of Defendant.  This was of course permissible, as "[t]he Supreme Court has long held that 'in the case of a lawful custodial arrest a *full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.'" *United States v. Lasley*, 412 Fed. Appx. 177, 180 (10th Cir. 2011) (quoting *United States v. Robinson,* 414 U.S. 218, 235 (1973) (emphasis added)).  Additionally, "the permissible scope of a search incident to arrest is not necessarily defined by the existence or absence of evidence of the particular crime for which the arrest is made." *Id.*  Trooper Mulkey

9

therefore had the authority to conduct a full search of Cole, including his pockets, even though there would be no evidence of the crime of eluding a police officer. *See Robinson*, 414 U.S. at 226 ("'When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.'") (quoting *Chimel v. California*, 395 U.S. 752, 762-763 (1969)). However, even if Trooper Mulkey informed Defendant that he was under arrest only after conducting the search of his person, he would have had a legitimate basis for doing so. *United States v. Mitchell*, 2017 WL 552732, at *9 (D. Kan. Feb. 10, 2017) ("In the Tenth Circuit, a warrantless search preceding an arrest is still 'a legitimate search incident to arrest as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search.'") (quoting *United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000) (quoting *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998)); *see also United States v. Sanchez*, 555 F.3d 910, 921 (10th Cir. 2009) ("[F]or search-incident-to-arrest purposes we may deem the arrest to have occurred before the formal announcement to a suspect that he is under arrest. To be sure, it appears that there can be no search incident to arrest unless the suspect is at some point formally placed under arrest."). Because the undersigned Magistrate Judge is satisfied that Trooper Mulkey had probable cause to arrest Cole prior to searching his person, he was therefore

justified in conducting a full, warrantless search of Cole's person incident to the arrest.

*B.   Search of Cole's Vehicle – Incident to Arrest.*

The next issue is whether Trooper Mulkey was authorized to search Cole's vehicle. In 2009, "the Supreme Court held that police are authorized to search a vehicle incident to a recent occupant's arrest in two instances: (1) when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search; and (2) 'when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Mitchell*, 2017 WL 552732, at *9 (quoting *Arizona v. Gant*, 555 U.S. 332, 343 (2009)). Here, Trooper Mulkey's search is not authorized by the first prong, as he handcuffed Cole prior to the search of the vehicle. Additionally, the second prong does not apply here because, as stated above, evidence of eluding a police officer would not be found in Cole's vehicle. Accordingly, Trooper Mulkey was not authorized to search Cole's vehicle incident to the arrest.

*C.   Search of Cole's Vehicle – Automobile Exception to the Warrant Requirement.*

"[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Ross,* 456 U.S. 798, 825 (1982) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). "Law enforcement officers may conduct a warrantless search of an automobile if they have probable cause to believe that it contains evidence of a crime or contraband.'" *United*

11

*States v. Frazier*, 429 Fed. Appx. 730, 733 (10th Cir. 2011) (citing *United States v. Burgess*, 576 F.3d 1078, 1087 (10th Cir. 2009)).  Under the automobile exception, "officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 584 U.S. 586, 592 (2018) (this is based on the ready mobility of vehicles, as well as the pervasive regulation of vehicles capable of traveling on the highway); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) (same).

In this case, the right to arrest Cole did not automatically provide the right to search Defendant's vehicle as there was no reason to believe the vehicle would contain evidence of the crime of arrest*, i.e.*, eluding a police officer; rather, it arose following Trooper Mulkey's return to the vehicle to clear it of other passengers.[3]  At that time, he observed the first pistol in plain view in the floorboard of the vehicle on the driver's side, which provided probable cause to search because he already knew Cole was a convicted felon. *United States v. Lopez*, 777 F.2d 543, 551 (10th Cir. 1985) ("The probable cause requirement is satisfied when the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search.") (quoting *United States*

---

[3] Having probable cause to arrest Defendant, Trooper Mulkey was authorized to conduct a full, warrantless search of Defendant incident to his arrest. *Robinson*, *supra*, 414 U.S. at 226.  Though none of the parties argues this, Trooper Mulkey's report indicates that the post-pursuit pat-down revealed several rounds of rifle ammunition on Cole's person.  The testimony and report only describe one pat-down of Cole, which preceded Trooper Mulkey's return to the vehicle to search for passengers and the identification of the pistol in the floorboard.  As such, it appears that the ammunition located in Cole's pockets, presumably discovered prior to Trooper Mulkey's search of the vehicle, likewise provides probable cause to search the vehicle. *See United States v. Perez*, 408 Fed. Appx. 198, 200-201 (10th Cir. 2011) (noting bullet found during legal pat-down search provides probable cause to search vehicle).

*v. Matthews*, 615 F.2d 1279, 1287 (10th Cir. 1980)); *see also Chambers v. Maroney*, 399 U.S. 42, 52 (1970) ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."); *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) ("[I]n cases where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained.*'") (quoting *Ross*, 456 U.S. at 809 (emphasis in *Dyson*)). The discovery of the pistol in plain view made it reasonable for Trooper Mulkey to believe that evidence relevant to a felon in possession of a weapon might be in the vehicle. *See United States v. Forbes*, 528 F.3d 1273, 1277-1278 (10th Cir. 2008) ("[T]he Fourth Amendment unquestionably prohibits the search of a vehicle's interior unless law enforcement officials receive consent, have a warrant, or otherwise establish probable cause to support the search.").

"Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005) (quotation omitted). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825; *see also United States v. Arzaga*, 9 F.3d 91, 94 (10th Cir. 1993) ("It is well established that a warrantless search of an automobile based on probable cause does

13

not violate the Fourth Amendment.") (citing *Carroll v. United States*, 267 U.S. 132 (1925) and *Acevedo*, 500 U.S. at 579-580). "Probable cause is measured against an objective standard[, although] an officer may draw inferences based on his own experience." *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004). The totality of the circumstances here therefore support probable cause for Trooper Mulkey's search. *See United States v. Stephenson*, 452 F.3d 1173, 1177 (10th Cir. 2006) ("Probable cause to search a vehicle exists if, under the totality of the circumstances, a fair probability exists that the vehicle contains contraband or other evidence which is subject to seizure under the law."). Accordingly, the undersigned Magistrate Judge finds that the automobile exception to the warrant requirement should apply, and the evidence obtained from the search should not be suppressed.

   D. *Search of Cole's Vehicle – Plain View/Probable Cause and Trooper Mulkey's Credibility.*

   i. <u>Plain View</u>. Cole contends that the Government's position regarding the first firearm being in plain view and justifying the further search of the vehicle is a recent fabrication because they previously relied on a justified "inventory search," and that Trooper Mulkey's testimony lacks evidentiary support. Specifically, Cole asserts that Trooper Mulkey first remembered the pistol was in plain view during his April 2025 conversation with Agent Keck, and that he did not use the term "probable cause" until the suppression hearing. He therefore urges skepticism regarding the Government's "original and new positions." Docket No. 129, p. 4.

   Cole asserts that Trooper Mulkey's original report negates any claims that the pistol

14

or any item was in plain view or that there was probable cause for a search. Cole particularly challenges Trooper Mulkey's memory that he heard a "thunk" before exiting the vehicle and argues it is inconsistent with the audio recording from the microphone Trooper Mulkey was wearing as well as his own report, and likewise challenges the assertion that Trooper looked in the vehicle for other passengers, as well as his memory as to the disposition of the Crown Royal bag. Furthermore, Cole correctly notes that Trooper Mulkey wholly failed to document the search with photographs in any way until he returned to the OHP office and took photographs here, nor did he document the information he received from other officers in the early days of his investigation into the uptick in burglaries in the area. Additionally, Cole challenges Trooper's Mulkey's testimony that he had been in law enforcement for twelve years but still used probable cause and inventory interchangeably.

> [T]he plain view doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied[:] First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

*United States v. Jimenez*, 864 F.2d 686, 688-689 (10th Cir. 1988) (quoting *Texas v. Brown*, 460 U.S. 730, 737 (1983) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465-466 (1971)). Trooper Mulkey's report states that he observed Cole exit the vehicle and immediately began to command Cole's actions, including raising his hands and

15

surrendering for arrest. The report does not mention that Cole closed the door after he exited it, and it *does* state that the two pistols were located on the floorboard of the vehicle. Trooper Mulkey told Agent Keck that the firearms were in plain view, and he testified that the plain view of the firearms provided him with probable cause to search the vehicle. Though developing in detail, there are no inconsistencies in these statements over time. There is nothing to indicate that anything else was on the floorboard covering either of these guns. This is easily contrasted with the case from this Court submitted by Defendant, in which the officer testified that he observed the butt of a handgun protruding from a backpack, but the official report contradicted it by specifically stating that officers *opened* the backpack and further indicating that the handgun was in the bottom of the backpack rather than on top. *See United States v. West*, Case No. CR-22-70-RAW (Findings and Recommendation, pp. 10-13).[4] Cole takes issue with Trooper Mulkey's report because it says he placed "Cole into custody and conducted an inventory of Cole's vehicle for impoundment." Dfdt. Hr'g Ex. 2, p. 5. But the sentence immediately following states that the pistols were found in the floorboard of the vehicle. Trooper Mulkey's failure to identify the proper term does not change the applicability of the exception to the facts. *See United States v. Phillips*, 71 F.4th 817, 824 (10th Cir. 2023) ("[I]t does not matter how the officers characterized or justified the search so long as facts establishing probable cause existed."). Moreover, while Trooper Mulkey's failure to document his search of the vehicle is less

_____

[4] Notably, the U.S. Magistrate Judge's Findings and Recommendation in this case lack any precedential value as they were never adopted and affirmed because the Government dismissed the case prior to any such ruling.

16

than ideal and further training may be appropriate, this alone does not change the general contours of the timeline of events as represented by Trooper Mulkey over time. Accordingly, Trooper Mulkey's observation of the pistol on the floorboard of the vehicle make it subject to the plain view exception because at the time he observed it he was aware of Cole's previous felony conviction and the incriminating nature was immediately apparent. *See, e.g.*, *United States v. Green*, 140 Fed. Appx. 798, 800 (10th Cir. 2005) ("Having personally observed the gun and knowing Mr. Green's background as a felon, we have no doubt that the cross-deputized officer had probable cause to conclude that the gun was evidence of a crime. Thus, no warrant was required for law enforcement to seize the gun.").

    ii. Trooper Mulkey's Credibility. The undersigned Magistrate Judge offers a final note on Trooper Mulkey's credibility. At the hearing, Defendant sought to admit as exhibits four civil complaints naming, *inter alia*, Trooper Mulkey as a Defendant.[5] *See* Dfdt. Hr'g Exs. 6-9. Defendant alleges Trooper Mulkey has been accused of dishonesty in his reports in these cases. The undersigned Magistrate Judge allowed the cases to be admitted "for purposes of they will go into the record," Docket No. 126, p. 133, lns. 1-2. Admitted or not, the Court may take judicial notice of these filings, and notes that they generally contain claims against Trooper Mulkey for excessive force and wrongful arrest. *See St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.

---

[5] Three of the civil complaints were filed in the Northern District of Oklahoma, and the remaining case was filed in Oklahoma state court in Tulsa County, Oklahoma. Plaintiffs in all four cases were represented by the same attorney.

1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").  "However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.'"  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).  This seems obvious on its face where, as here, a civil Complaint contains *allegations*, not facts.[6]  *See United States v. Harmon*, 871 F. Supp. 2d 1125, 1158 (D.N.M. 2012), *affirmed*, 742 F.3d 451 (10th Cir. 2014) ("Given that the Fourth–Amendment analysis is objective in nature, disregarding an officer's subjective intentions, it is difficult to characterize Fourth–Amendment violations as per se bearing on an officer's character for truthfulness.").

Additionally, Defendants called Trooper Mulkey's former supervisor Mark Roach, who was formerly an OHP Captain, to testify regarding Trooper Mulkey.  He testified that he was "the boss of [Trooper Mulkey's] boss" for approximately five and a half months in 2022 and encountered him at least weekly during that time.  He observed Trooper Mulkey's integrity, work habits, character and fitness, and report writing, and developed the opinion that Trooper Mulkey "has some honesty and integrity issues."  Docket No. 126, pp. 162-166.  The undersigned Magistrate Judge has assessed the credibility of each witness who

---

[6] Even in the civil context, such evidence is often deemed inadmissible.  *See also Montoya v. Shelden*, 898 F. Supp. 2d 1279, 1299-1300 (D.N.M. 2012) ("Federal courts faced with the question of admitting, under rule 404(b), defendant officers' other unrelated § 1983 cases as evidence of the defendant officers' intent for punitive damages have reached the same conclusion in performing a 403 balancing test.") (collecting cases).

appeared at the suppression hearing, and determined that Trooper Mulkey's testimony and previous statements were generally consistent with his report.

    iii.  <u>Trooper Mulkey's Use of Force</u>.  At the hearing, Trooper Mulkey testified that he used minimal force in arresting Cole, *id.*, p. 25, and Defendant's counsel questioned him about the truth of that assertion, pointing to Cole's booking photo.  Dfdt. Hr'g Ex. 12. Counsel asked Trooper Mulkey if it appeared Cole had been injured by scrapes on his right cheek, which Trooper Mulkey denied.  Docket No. 126, pp. 125-127.  The booking photo, though not in high resolution, appears to show Defendant's right cheek has a reddened spot that is not mirrored on the left cheek, and the audio footage records Cole making a comment about Trooper Mulkey "stomping" his head, with Trooper Mulkey responding that he pushed Cole to the ground so he could not move.  *See* Docket No. 129, p. 8 (Tr. 38:08-38:08).  Cole has not, however, submitted any documentation of the nature and extent of any injuries or that he required medical treatment (or requested such treatment and was denied) following his arrest.  Cole contends that Trooper Mulkey lied about injuring Cole, and that the four civil complaints likewise bolster the argument that Trooper Mulkey's statements lack credibility, thus urging the Court to suppress the evidence from the vehicle as in the *West* case, cited above.  Neither the four cases cited above nor the *West* case, however, support Cole's attack on Trooper Mulkey credibility.  While it is possible, even likely, that Cole incurred scrapes on his face from being ordered to the ground before he was handcuffed, this alone is insufficient to suppress the evidence in this case.

19

E.  *Search of Cole's Vehicle – Inventory.*

Cole further contends that the inventory exception does not apply because any search of the vehicle was not conducted in accordance with OHP policy.  *See United States v. Sitlington*, 527 Fed. Appx. 788, 791 (10th Cir. 2013) ("An inventory search is 'reasonable only if conducted according to standardized procedures,' and it 'must not be a ruse for a general rummaging in order to discover incriminating evidence.'") (quoting *United States v. Haro-Salcedo*, 107 F.3d 769, 772-773 (10th Cir. 1997)).  The undersigned Magistrate Judge agrees that there is no indication that a proper inventory was performed, as there is no record of it and no testimony from any officer who conducted a proper inventory.  The undersigned Magistrate Judge nevertheless concludes that the discovery and seizure of evidence was justified under the Fourth Amendment pursuant to the inevitable discovery doctrine.

"To prove the seized evidence would have been inevitably discovered, the government can rely on a hypothetical inventory search, but only if such a search would not have transgressed its administrative purposes."  *United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008).  The Government has met its burden here because the firearms were located in plain view in the floorboard of the vehicle and would inevitably have been discovered them as Troopers towed the vehicle.  *See, e. g.*, *United States v. Howe*, 313 F. Supp. 2d 1178, 1187 (D. Utah 2003) ("Notwithstanding the Court's finding that the search of Defendant's vehicle and the containers found therein was not a valid inventory search, the Court finds that the evidence recovered during the search of the vehicle, including that

20

found in the locked briefcase, would have been inevitably discovered. . . . In *Haro-Salcedo*, subsequent to finding the search inproperly categorized as an inventory search because of the officer's failure to following the police department's standardized procedures regarding such, the court found that a 'proper inventory search would have uncovered the cocaine in the trunk of [defendant's] vehicle.'") (quoting *Haro-Salcedo*, 107 F.3d at 774).   The undersigned Magistrate Judge is therefore satisfied that the weapons inevitably would have been discovered and seized in the conduct of an appropriate inventory search pursuant to police policy, and suppression of the weapons is therefore not appropriate on the facts of this case. *See Haro-Salcedo*, 107 F.3d at 773 ("'[T]he question whether or not the trooper conducted a proper inventory search is moot. If evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.'") (quoting *United States v. Horn*, 970 F.2d 728, 732 (10th Cir. 1992) (quoting *United States v. Ibarra*, 955 F.2d 1405, 1410 (10th Cir. 1992)).  *See also United States v. Sitlington*, 527 Fed. Appx. 788, 792 (10th Cir. 2013) ("Without reaching the question of whether the officers' inventory search of Sitlington's truck was constitutionally sound, we conclude that the rifle would have been inevitably discovered in a properly-conducted inventory search."); *United States v. Mendez*, 315 F.3d 132, 139 (2nd Cir. 2002) ("We doubt that the police officers were conducting a valid inventory search themselves, but we do not reach this question.  Like the district court, we conclude that the evidence would inevitably have been discovered in a valid inventory search.").

## II.    Search Warrant

Defendants contend that the search warrant should be suppressed as fruit of an illegal search of Cole's vehicle and that the search warrant itself was also invalid.  As discussed above, the undersigned Magistrate Judge finds that the search of Cole's vehicle was supported by probable cause and that the evidence obtained therefrom should not be suppressed.  As to the search warrant itself, Defendants assert that the information in the search warrant was stale, the search warrant lacked probable cause because it was based on an unreliable informant, the affidavit contained material omissions and misrepresentations by Trooper Mulkey, and the good faith exception does not apply.

### A.  Staleness

Defendants first assert that the stolen motorcycle was a "time sensitive item," and that the evidence was stale when the affidavit was signed seventeen days later.  Defendants further contend that Trooper Mulkey's affidavit lacked a critical timeframe because it did not identify dates related to the alleged "numerous occasions [Secrest was at the residence] purchasing drugs," and that the affidavit states without a timeframe that Secrest had seen "approximately 100 to 200 illegal firearms inside the residence, along with kilos of methamphetamine."  Dfdt. Hr'g Ex. 10, p. 4.

"Probable cause for a search warrant cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."  *United States v. Harris,* 369 F.3d 1157, 1165 (10th Cir. 2004) (internal quotation marks omitted). "Information is not stale, however, merely due to the number of days elapsed."  *United*

*States v. Lester*, 285 Fed. Appx. 542, 546 (10th Cir. 2008). "Staleness of information is determined by the element of time and 'the nature of the criminal activity, the length of the activity, and the nature of the property to be seized.'" *United States v. Hutchins*, 2024 WL 1739747, at *4 (E.D. Okla. Apr. 23, 2024) (quoting *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990)).

Trooper Mulkey testified that Secrest had been at the residence seven to fourteen days prior, Tr., p. 158, but correctly notes this information was not in the affidavit. However, the affidavit references the date the motorcycle was stolen as November 1, 2023, and Secrest could only have delivered it after that time and before November 18, 2023, when Trooper Mulkey signed the affidavit. The affidavit prepared by Trooper Mulkey, however, is not based solely on the information regarding one stolen motorcycle. The undersigned Magistrate Judge agrees that a "mere isolated violation," particularly one involving stolen property that is likely to be moved quickly, may be insufficient for probable cause after seventeen days. *See United States v. Johnson,* 461 F.2d 285, 287 (10th Cir. 1972) ("Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time."). But "where the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical." *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986). Such is the case here, where the affidavit recites ongoing, continuous activity related to both firearms and illegal drugs, and is supported by a traffic stop the same day in which Defendant Cole was found to have both firearms and drugs in his

vehicle. *See United States v. Cantu*, 405 F.3d 1173, 1177-1178 (10th Cir. 2005) ("[O]therwise stale information may be refreshed by more recent events," and "[w]hen the circumstances suggest ongoing criminal activity, the passage of time recedes in importance.").

Furthermore, the search warrant itself sought items including drugs and related paraphernalia and documentation, as well as firearms, in addition to, *inter alia*, vehicle parts and VIN numbers. Both firearms and drugs are the type of item that can be kept for longer lengths of time. *See United States v. James*, 1997 WL 557576, at *2, 124 F.3d 218 (10th Cir. 1997) (unpublished table opinion) ("[M]any of the items sought by way of the search, 'firearms, ammunition, documents relating to illegal firearms possession, acquisition or disposition, illegal narcotics and paraphernalia used in the manufacturing and distribution of narcotics,' Suppl. R. Vol. I, Affidavit at 11, are 'of the type that would be kept for some time given the nature of defendant's activities[.]'") (quoting *Snow,* 919 F.2d at 1460).

### B. *Probable Cause/Material Omissions and Representations*

Defendants next contend the search warrant lacked probable cause because Secrest was an unreliable informant and Trooper Mulkey made material omissions. Although Secrest was identified in the affidavit, Defendants note he was not a disinterested neighbor or eyewitness and therefore his statements should be evaluated for veracity, reliability, and basis of knowledge. In support, Defendants note the affidavit contains no information on Secrest's reliability and Defendants assert Trooper Mulkey consciously withheld from the

24

affidavit the fact that Secrest was actively seeking help with criminal charges pending against him. They contend this omission was critical to the probable cause determination regarding Secrest's credibility and veracity. Additionally, they assert that Trooper Mulkey was clearly aware of Secrest's criminal history, but likewise did not include that. In response, the Government asserts that the omission of the quid pro quo information was not material to probable cause, does not taint the information provided or negatively shade his credibility, and the information ultimately was largely corroborated by the evidence found in Cole's vehicle.

Defendants also assert Secrest's claim that the residence had one to two hundred guns was belied by the search itself and thus confirmed his propensity for exaggeration. Furthermore, they contend the Government provided no sufficient independent corroboration of Secrest's statements because the surveillance only confirmed the location of the residence and who lived there, not any suspicious activity. *See United States. v. Soto–Cervantes,* 138 F.3d 1319, 1323 (10th Cir. 1998) ("The verification of facts readily observable to anyone on the street, without more, is insufficient to support a reasonable suspicion that criminal conduct is occurring."). This argument, however, presupposes that the evidence found in the search of Cole's vehicle would be suppressed, which the undersigned Magistrate Judge recommends against, as discussed above. Defendants also note that Trooper Mulkey testified that Secrest had only been to the residence two or three times, which was supported by his inability to describe only the general location of the house, and not the "numerous occasions" as represented in the affidavit. Additionally,

25

Defendants contend that the firearms, ammunition, and drugs seized following the traffic stop do not establish probable cause to search the residence.

"[T]he complete failure of an affidavit to discuss the reliability of an informant does not automatically preclude a finding of probable cause; rather, '[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.' Nor is the affidavit's failure to discuss the informant's criminal history when outlining the informant's reliability automatically fatal." *United States v. Cassola*, 2020 WL 1000161, at *4 (D.N.M. Mar. 2, 2020) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)). While Secrest's criminal history was not provided, the affidavit clearly states Secrest delivered a stolen motorcycle to Cole's residence. Based on this, the state District Judge was aware Secrest was "not a model citizen," *United States v. Avery,* 295 F.3d 1158, 1168 (10th Cir. 2002), and that his information included statements against his own interest. *See, e.g.*, *United States v. Comer*, 565 Fed. Appx. 729, 733-734 (10th Cir. 2014). The Tenth Circuit has noted that "judges issuing search warrants often know, even without an explicit discussion of criminal history, that many confidential informants suffer from generally unsavory character and may only be assisting police to avoid prosecution for their own crimes." *United States v. Morin*, 188 Fed. Appx. 709, 712 (10th Cir. 2006) (quotation omitted). It is not clear how the district judge's knowledge of Secrest's criminal history or of his desire for help with his other criminal cases, would have undermined the calculus of probable cause here, where Secrest provided firsthand information regarding Cole's activities, including that he had been to

the house to deliver a stolen vehicle and to purchase drugs, rather than just secondhand rumors, and that information was supported by the traffic stop of Cole the same day the search warrant was issued. *See United States v. Hendrix,* 664 F.3d 1334, 1338 (10th Cir. 2011) ("An informant's tip which provides highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity is more likely to be found sufficient to support probable cause.") (internal quotation marks omitted) (quotation omitted); *see also Comer*, 565 Fed. Appx. at 734 ("Additional information about the informant's criminal background would not have materially undermined the reasons to credit his basis of knowledge."). *Cf. United States v. Singleton*, 165 F.3d 1297, 1301 (10th Cir. 1999) ("Indeed, '[n]o practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence.'") (quoting *United States v. Cervantes–Pacheco,* 826 F.2d 310, 315 (5th Cir.1987)). The undersigned Magistrate Judge is likewise mindful that "[o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *United States v. Nolan,* 199 F.3d 1180, 1182-1183 (10th Cir. 1999) (quotation omitted).

As part of their arguments regarding Secrest's credibility, Defendants likewise challenge Trooper Mulkey's credibility as Defendant Cole did in his challenge of the vehicle search, contending Trooper Mulkey repeatedly exaggerated, embellished, and inflated the information he possessed in order to create probable cause. In support,

Defendants assert that many of the details regarding the alleged stolen motorcycle contained uncorroborated details. While Trooper Mulkey's surveillance, combined with Secrest's information, was insufficient for probable cause, *see United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001) ("Almost anyone can describe the residents of, and vehicles at, a particular home without having any special knowledge of what goes on inside the home."), that changed after the traffic stop when Trooper Mulkey was able to independently corroborate Cole's connections to firearms, despite being a convicted felon, as well as a distributable amount of methamphetamine, the same drug as alleged by Secrest.

Finally, while the "fact drugs were discovered in [Cole's] vehicle does not necessarily provide a nexus with his residence," *United States v. Esterline*, 287 Fed. Appx. 693, 698 (10th Cir. 2008), the affidavit included statements from Secrest that he had been there to purchase drugs, and that he had seen both guns and drugs present on the property. This information provides sufficient nexus. Trooper Mulkey's testimony does seem to contradict the affidavit on one particular point – the number of times Secrest had been to Cole's residence. The affidavit says he had been there "on numerous occasions," but Trooper Mulkey clarified that Secrest had only been there two to three times because Cole preferred conducting transactions away from his residence. Additionally, Defendants challenge the assertion that there were 100 to 200 firearms at the residence. The parties have not provided the return information for the search warrant, but the Government's response indicates that law enforcement recovered from the property, *inter alia*, several kilograms of suspected methamphetamine, "multiple" firearm suppressors and firearms,

28

and over 200 pounds of various calibers of ammunition.  And again, probable cause is based on a probability, not a certainty.

"[A] Fourth Amendment violation occurs if '(1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued.'  Thus in order to obtain any sort of relief under *Franks*, a defendant must show both recklessness and materiality." *United States v. Moses*, 965 F.3d 1106, 1110-1111 (10th Cir. 2020) ("[F]ailure to show either materiality or recklessness is fatal to a defendant's entitlement to a *Franks* hearing.") (quoting *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) (citation omitted)). "[T]he standards of 'deliberate falsehood' and 'reckless disregard' set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."  *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (quotation omitted).  But even removing the number of times Secrest visited the residence and the number of firearms observed, the affidavit would reflect that Secrest had been to the residence and observed firearms and drugs.  The undersigned Magistrate Judge finds that Trooper Mulkey's inclusion of these statements does not reach a reckless disregard for the truth and are not material misstatements.[7]

*C.  Good Faith*

Even assuming, however, that the search warrant lacked probable cause, the

---

[7] Law enforcement officers should, however, be trained sufficiently on preparing affidavits such as the one in this case in such a way as to scrupulously and accurately reflect any relevant known information.

undersigned Magistrate Judge finds that *Leon*'s[8] good faith exception would apply. There are generally four situations in which the good faith exception to the exclusionary rule provided by *Leon* does not apply: (i) when the issuing judge was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (ii) when the issuing judge wholly abandons the judicial role; (iii) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (iv) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *See Leon*, 468 U.S. at 923. "[T]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990) (quotation omitted)). Defendants contend that that the first and third situation apply here, and therefore the good faith exception should not apply.

The undersigned Magistrate Judge finds that the first exception is not present here. As noted above, the undersigned Magistrate Judge conducted a *Franks* hearing on the veracity of the affidavit here, listened to the testimony of Trooper Mulkey, and reviewed the record. As noted above, the undersigned Magistrate Judge finds that the mistakes and misstatements do not affect the determination of probable cause, and there is no evidence Trooper Mulkey deliberately lied[9] or recklessly disregarded the truth.

---

[8] *United States v. Leon*, 468 U.S. 897 (1984).

[9] Indeed, Trooper Mulkey himself corrected the record when directly asked how many times Secrest had been to Cole's residence. The undersigned Magistrate Judge finds the description of

As to the third exception, the undersigned Magistrate Judge finds that the affidavit was not so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable.  Under this standard, an officer cannot be said to have acted in good faith where the underlying documents are "devoid of factual support."  *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005) (citing *Corral-Corral*, 899 F.2d at 939); *see also Gonzales*, 399 F.3d at 1231 ("[G]ood faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established."). Upon review of the affidavit, there were sufficient indicia of reliability in the affidavit that it cannot be classified as "bare bones."  Trooper Mulkey received information from a known informant, who could be held accountable for lying to law enforcement; the information itself was specific and detailed, and it inculpated Secrest in criminal activity. Furthermore, Trooper Mulkey confirmed the exact location of the residence and the Defendants lived there, and further corroborated the allegations with the results of the traffic stop.  Trooper Mulkey acted reasonably in obtaining and in relying upon the search warrant, and exclusion is therefore not justified.

## III.    Chesser's Statements

Finally, Chesser contends that any statements she made during or following the execution of the search warrant should be suppressed as fruit of the poisonous tree.  As noted above, however, the undersigned Magistrate Judge finds that both the traffic stop and

---

"numerous times" as opposed to two to three times to be more akin to a poor drafting choice than a deliberate falsehood.

the search warrant were valid and the evidence obtained therefrom should not be suppressed. Accordingly, the undersigned Magistrate Judge finds that Chesser's statements are not tainted by any illegality and should not be suppressed.

### Conclusion

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and RECOMMENDS that all portions of Defendant Chesser's Motion to Suppress Evidence and Brief in Support [Docket No. 94] and Defendant Cole's Motion to Suppress and Brief in Support [Docket No. 103] be DENIED by the Court, with the exception of the request for hearing which was previously granted and a suppression/*Franks* hearing held on May 6, 2025 [Docket Nos. 122, 126]. Any objections to this Report and Recommendation must be filed within fourteen (14) days.

IT IS SO ORDERED this 5th day of June, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**